**Carl J. MOLLNOW, Plaintiff-Appellant,**

v.

**Paul K. CARLTON, et al.,
Defendants-Appellees.**

No. 80–3452.

United States Court of Appeals,
Ninth Circuit.

Argued Jan. 8, 1982.
Decided Sept. 20, 1983.

Robert M. Taylor, Asst. U.S. Atty., Seattle, Wash., for defendants-appellees.

John W. Shonkwiler, Portland, Or., for plaintiff-appellant.

Before ANDERSON and ALARCON, Circuit Judges, and CRAIG,* District Judge.

J. BLAINE ANDERSON, Circuit Judge:

Mollnow, a former officer and pilot in the United States Air Force and Air Force Re-

---

* The Honorable Walter E. Craig, Senior United States District Judge, District of Arizona, sit-

ting by designation.

serve, appeals the dismissal of his complaint against fellow military officers. The complaint alleged that Mollnow repeatedly identified and submitted reports concerning unsafe conditions and policies in the operation of heavy jet aircraft. His suggestions were ignored. According to the complaint, an aircraft subsequently crashed in precisely the manner Mollnow had predicted, creating an embarrassing situation for his superiors. The remainder of the complaint alleges an elaborate conspiracy to have Mollnow removed from flight duty and ultimately from the service. The conspiracy allegedly included suppression of Mollnow's reports and imprisonment in a psychiatric ward to prevent him from testifying about the crash. Mollnow was also allegedly prevented from seeking redress under the Uniform Code of Military Justice ("UCMJ") because his commanding officers refused to act on his grievances.

The complaint sought damages for direct constitutional violations under *Bivens v. Six Unknown Named Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), for violations of 42 U.S.C. §§ 1985 and 1986, and for numerous common law torts. Defendants, who were various of Mollnow's commanding officers or attending medical personnel, moved for dismissal contending they were immune from suit by a fellow serviceman for service-connected claims. Mollnow appealed from the grant of that dismissal.

Subsequent to oral argument in this case, the Supreme Court granted certiorari in *Wallace v. Chappell,* 661 F.2d 729 (9th Cir. 1981), *cert. granted,* —— U.S. ——, 103 S.Ct. 292, 74 L.Ed.2d 276 (1982). Because we believed the Supreme Court's disposition of *Chappell* might control our decision here, we withdrew submission of this case pending *Chappell's* outcome. *Chappell* was decided June 13, 1983, —— U.S. ——, 103

S.Ct. 2362, 76 L.Ed.2d 586 (1983), and we have received supplemental briefing concerning its effect on the present case. The present case now stands resubmitted as of the date of this decision.

## I.

■ We begin by addressing two of Mollnow's claims for which reference to *Chappell* is unnecessary.[1] The § 1985(3) claim was properly dismissed because Mollnow did not allege that defendants' conduct was motivated by a racial or other class-based, invidiously discriminatory animus. *Griffin v. Breckenridge,* 403 U.S. 88, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971); *Scott v. Rosenberg,* 702 F.2d 1263, 1269–70 (9th Cir. 1983).

■ The common law tort claims were also properly dismissed. In *Lewis v. United States,* 663 F.2d 889 (9th Cir.1981), *cert. denied,* 457 U.S. 1133, 102 S.Ct. 2959, 73 L.Ed.2d 1350 (1982), this court applied the *Feres* doctrine[2] to bar the wrongful death claim of a marine pilot's widow who alleged her husband's death was intentionally caused. In *Bailey v. Van Buskirk,* 345 F.2d 298 (9th Cir.1965), *cert. denied,* 383 U.S. 948, 86 S.Ct. 1205, 16 L.Ed.2d 210 (1966), we extended the *Feres* rationale to a serviceman's direct suit against other servicemen. *Accord Mattos v. United States,* 412 F.2d 793 (9th Cir.1969). Thus, Mollnow's common law tort claims, both negligent and intentional, are barred under *Feres.*

## II.

In *Chappell v. Wallace,* Navy enlisted men brought an action for damages and declaratory and injunctive relief against their superior officers. Their complaint alleged that the officers, in making duty assignments, submitting performance evalua-

---

1. Although the district court did not dispose of these two claims in the manner we do, we can affirm on any basis presented by the record. *M.O.S. Corp. v. John I. Haas Co.,* 375 F.2d 614, 617 (9th Cir.1967).

2. In *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that the United States is not liable,

under the Federal Tort Claims Act, for injuries to military personnel which "arise out of or are in the course of activity incident to service." *Id.* at 146, 71 S.Ct. at 159, 95 L.Ed. at 161. *Feres* was broadly reaffirmed in *Stencel Aero Engineering Corp. v. United States,* 431 U.S. 666, 97 S.Ct. 2054, 52 L.Ed.2d 665 (1977).

tions and in imposing penalties, had discriminated against the enlisted men on the basis of race in violation of their constitutional rights. The complaint also alleged a conspiracy to deprive the enlisted men of equal protection in violation of 42 U.S.C. § 1985(3).

The Supreme Court analyzed the enlisted men's direct constitutional claims in terms of whether they stated a cause of action under *Bivens.* The Court recognized that "[b]efore a *Bivens* remedy may be fashioned ... a court must take into account any 'special factors counselling hesitation.'" —— U.S. at ——, 103 S.Ct. at 2364. The Court then reviewed the rationale of *Feres,* including "the unique disciplinary structure of the military establishment and Congress' activity in the field." *Id.* at ——, 103 S.Ct. at 2367. The Court determined that the *Feres* reasoning imposed "'special factors' which dictate that it would be inappropriate to provide enlisted military personnel a *Bivens*-type remedy against their superior officers." *Id.*

In the instant case, Mollnow argues that *Chappell* does not establish a complete bar to actions by servicemen against their superiors. Mollnow relies on *Chappell's* discussion of the UCMJ, and contends a court must look to the adequacy of the remedy available under the UCMJ before dismissing. According to Mollnow, the injuries alleged in *Chappell*—undesirable duty assignments, low performance evaluations, severe penalties—were all processes subject to UCMJ review, while his allegations of interference with the performance of his duties are not. Moreover, contends Mollnow, part of the conspiracy he alleged included the intentional prevention of his access to UCMJ remedies.

We find Mollnow's distinctions unpersuasive. Under Article 138 of the UCMJ, 10 U.S.C. § 938, Mollnow was entitled to confront his commanding officer with the alleged interferences in the performance of his duties. If he was refused redress, he could then forward his "Complaint of Wrongs" to any superior commissioned officer who would in turn notify the appropriate officials to investigate the possibility of court martial. This internal military procedure may not be adequate to Mollnow's satisfaction, but it is the only remedy that Congress has made available. *Chappell* leaves no question that the Supreme Court does not intend to imply an additional remedy.

Mollnow's most troublesome allegation is that his repeated "Complaint[s] of Wrongs" were ignored by every officer up through the chain of command, thus preventing his access to proper UCMJ review. For purposes of the dismissal of the complaint, we must assume the truth of this and all other claims. Yet we do not believe that even this allegation will survive close analysis of *Chappell.*

*Chappell* reversed an opinion of this court that attempted to take into account precisely the factors for which Mollnow argues. In *Wallace v. Chappell,* 661 F.2d 729 (9th Cir.1981), we adopted the so-called *Mindes*[3] test for determining the reviewability of military decisions. That test would include, among other factors, the exhaustion of intraservice remedies and the potential injury to the plaintiff if review was refused. 661 F.2d at 732–33. While the Supreme Court discussed the availability of intraservice remedies in *Chappell,* it did not suggest that an inadequate intraservice remedy would change its result. On the contrary, while the Court was unwilling to say that "military personnel are barred from redress in civilian courts for all constitutional wrongs,"[4] its unquestionable hold-

---

**3.** *Mindes v. Seaman,* 453 F.2d 197 (5th Cir. 1971).

**4.** As examples of cases where military personnel still have access to civilian courts for constitutional wrongs, the Supreme Court cited *Brown v. Glines,* 444 U.S. 348, 100 S.Ct. 594, 62 L.Ed.2d 540 (1980); *Parker v. Levy,* 417 U.S.

733, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974); and *Frontiero v. Richardson,* 411 U.S. 677, 93 S.Ct. 1764, 36 L.Ed.2d 583 (1973). We note that none of those cases was a suit for damages against a superior officer. *Brown* involved a First Amendment attack on Air Force regulations requiring approval of a commanding officer for circulation of petitions on base; *Parker*

ing was that "military personnel may not maintain a suit to recover damages from a superior officer for alleged constitutional violations." —— U.S. at ——, 103 S.Ct. at 2368. By rejecting this court's consideration of such "reviewability factors" as the adequacy of the intraservice remedy, we believe the Court necessarily imposed a *per se* prohibition on the filing of *Bivens*-type actions by servicemen against their superiors. We find no room in *Chappell* to consider the adequacy of the intraservice remedy. Thus, Mollnow's *Bivens* claims were properly dismissed.[5]

### III.

In *Chappell,* the Supreme Court declined to address the issue whether servicemen could maintain an action against their superiors under 42 U.S.C. § 1985(3). —— U.S. at ——, n. 3, 103 S.Ct. at 2368, n. 3. We need not decide that precise issue in this case because of our previous disposition of § 1985(3). We must, however, decide whether the reasoning of *Chappell* will operate to bar a serviceman's claim against his superiors under § 1985(1).

Section 1985(1) provides as follows:

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest,

interrupt, hinder, or impede him in the discharge of his official duties;

. . . . .

(3) . . . the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Our research discloses that § 1985(1) has been seldom discussed. The leading case addressing the provision is *Stern v. United States Gypsum, Inc.,* 547 F.2d 1329 (7th Cir.), *cert. denied,* 434 U.S. 975, 98 S.Ct. 533, 54 L.Ed.2d 467 (1977). In *Stern,* the Seventh Circuit interpreted § 1985(1) as protecting not only federal officers who are injured while attempting to enforce the provisions of the Fourteenth Amendment, but also those injured in the course of their day-to-day federal duties unrelated to the Fourteenth Amendment. The court arrived at that interpretation after a thorough and meticulous review of the legislative history underlying § 2 of the Civil Rights Act of 1871, the original statute from which § 1985 was codified. *Id.* at 1334–36, 1338–39. Recently, the Supreme Court engaged in a similar historical analysis of § 1985 and determined that § 1985(1), the first portion of § 1985(2), and the second portion of § 1985(3) do not require that conspirators act with intent to deprive their victims of equal protection. *Kush v. Rutledge,* —— U.S. ——, 103 S.Ct. 1483, 1486–87, 75 L.Ed.2d 413 (1983). *Accord McCord v. Bailey,* 636 F.2d 606, 614–17 (D.C.Cir.1980); *cert. denied,* 451 U.S. 983, 101 S.Ct. 2314, 68 L.Ed.2d 839 (1981).

 In light of the foregoing, we agree with those courts that have interpreted § 1985(1), in contrast to certain other civil rights statutes, as creating substantive rights and as not being limited to providing a remedy for the violation of a constitution-

---

arose in the habeas corpus context and was a vagueness challenge to criminal provisions of the UCMJ; *Frontiero* was an equal protection attack on statutes which discriminated against servicewomen in the computation of military benefits.

**5.** It is not necessary for us to determine whether the *Mindes,* 453 F.2d 197 (5th Cir.1971),

analysis adopted by the panel in *Chappell v. Wallace,* 661 F.2d 729 (9th Cir.1981), survived the Supreme Court's decision in *Wallace* for other categories of claims. It is enough to say that the Supreme Court did not adopt it for this category of claims for which there is no *Bivens*-type relief.

al provision. *E.g., Stern; Stith v. Barnwell,* 447 F.Supp. 970, 972–74 (M.D.N.C.1978); *Perry v. Golub,* 400 F.Supp. 409 (N.D.Ala. 1975). Consequently, our disposition of Mollnow's constitutional claims under *Bivens* and § 1985(3) does not necessarily dictate dismissal of his § 1985(1) claim. We do not perceive Mollnow's § 1985(1) claim as constitutional in origin, but rather simply as the violation of a statute. Thus, we are not faced with the question whether a statutory claim based on a constitutional violation is subject to the result announced in *Chappell.* We must decide only the narrow question whether military subordinates have a remedy under § 1985(1) against their military superiors. We hold they do not.

The precise holding of *Chappell* does not dictate the result here. *Chappell* did not establish a broad intraservice immunity against claims by servicemen. Rather, *Chappell* held only that the "unique disciplinary structure of the military and Congress' activity in the field constitute 'special factors'" militating against the recognition of a *Bivens* remedy for servicemen against their superiors. The Court's method of analysis leaves room for Congress to enact legislation authorizing servicemen's constitutional claims against their superiors.

Our analysis in this case differs from *Chappell* because § 1985(1) *is* legislation specifically authorizing suit by injured federal officers. *See Canlis v. San Joaquin Sheriff's Posse Comitatus,* 641 F.2d 711 (9th Cir.) (holding § 1985(1)'s protections extend only to federal officers), *cert. denied,* 454 U.S. 967, 102 S.Ct. 510, 70 L.Ed.2d 383 (1981). In the face of such an express statutory claim, we need not consider *Bivens'* "special factors counseling hesitation." Nevertheless, the rationale of *Chappell* and *Feres* guides our decision that military officers may not sue their superiors under § 1985(1). *Feres* is particularly helpful because, as does the present case, it involved the question whether Congress intended to allow servicemen's suits under a statute that did not expressly allow or disallow such suits.

Both the Supreme Court and this court have recognized that "[i]n the last analysis,

*Feres* seems best explained by the 'peculiar and special relationship of the soldier to his superiors, [and] the effects of the maintenance of such suits on discipline ....'" *United States v. Muniz,* 374 U.S. 150, 162, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805, 815 (1963) (quoting *United States v. Brown,* 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139, 143 (1954)). *Accord United States v. Lee,* 400 F.2d 558, 563–64 (9th Cir.1968). A § 1985(1) action would strike directly at that special military relationship, perhaps even more so than an action for negligence. In a negligence action, a spontaneous event has occurred; someone has suffered an accident and another is at fault. Under § 1985(1), however, an action would lie even for calculated decisions made in the judgment and discretion of a superior military officer, so long as the subordinate alleged the superior had interfered with his military "duties." Then a *civil* jury would be impaneled to inquire into the nature of this uniquely military matter, and damages could be assessed against the superiors for the exercise of their judgment and discretion. Such a result would offend the principles announced in *Chappell,* where the Court stated: "Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment." —— U.S. at ——, 103 S.Ct. at 2365.

The *Chappell* case discussed at length Congress' plenary authority over the military. *Id.* In the exercise of that authority, Congress has enacted "a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure." *Id.* Section 1985(1) is completely foreign to that system. Just as the *Feres* court could identify "no American law which has ever permitted a soldier to recover for negligence" against his superiors, 340 U.S. at 141, 71 S.Ct. at 157, 95 L.Ed. at 158, we know of no civilian law that would prevent superior officers, in the exercise of their wide discre-

tion, from ordering a subordinate to refrain from performing a specific duty. The military could not function under those conditions. If the subordinate felt the order was unjust, he would have his opportunity to attack the decision before military tribunals. Congress established that procedure to address internal military matters. It obviously did not intend to supplement those internal military procedures through the enactment of § 1985(1). Accordingly, Mollnow's § 1985(1) claim was properly dismissed.

### IV.

 Mollnow's final claim is for relief under § 1986. Section 1986 depends on the existence of a claim under § 1985. *Williams v. St. Joseph Hospital*, 629 F.2d 448, 452 (7th Cir.1980). Having affirmed the dismissal of Mollnow's § 1985 claims, we also affirm the dismissal of § 1986.

Mollnow has offered other arguments, particularly with respect to his active duty status. We have considered all of those arguments and found them to be without merit. Accordingly, judgment of the district court is

AFFIRMED.