Frank **ALVAREZ, Jr.,** Plaintiff,

v.

**Almon C. WILSON, etc., et al.,** Defendants.

No. 75 C 2734.

United States District Court, N.D. Illinois, E.D.

Jan. 11, 1985.

Ronald J. Clark, Chicago, Ill., for plaintiff.

Dan K. Webb, U.S. Atty., James T. Hynes, Nancy K. Needles, Asst. U.S. Attys., Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

PLUNKETT, District Judge.

Frank Alvarez, Jr. ("Plaintiff"), who was at all relevant times an officer in the United States Navy, brought this action against five individuals ("Defendants"), all of whom were at all relevant times Plaintiff's superior officers in the Navy, seeking compensatory and punitive damages for Defendants' alleged violations of Plaintiff's constitutional and other civil rights. Count I of Plaintiff's complaint is grounded directly on the Due Process Clause of the Fifth Amendment, Count II on 42 U.S.C. § 1985(3) ("§ 1985(3)"), Count III on 42 U.S.C. § 1985(1) ("§ 1985(1)"), and Count IV on 42 U.S.C. § 1986 ("§ 1986");[1]

---

**1.** Section 1985 provides, in part, as follows:

(1) If two or more persons in any State or Territory conspire to prevent, by force, intimidation, or threat, any person from accepting or holding any office, trust, or place of confidence under the United States, or from discharging any duties thereof; or to induce by like means any officer of the United States to leave any State, district, or place, where his duties as an officer are required to be performed, or to injure him in his person or property on account of his lawful discharge of the duties of his office, or while engaged in the lawful discharge thereof, or to injure his property so as to molest, interrupt, hinder, or impede him in the discharge of his official duties; ...

(3) If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any

case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

Section 1986 provides as follows:

Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

Counts V and VI of the complaint, in which Plaintiff purported to proceed on behalf of a class, were voluntarily dismissed by Plaintiff several years ago. Jurisdiction is based on 28 U.S.C. §§ 1331 and 1343. Presently before the court is Defendants' motion, under Fed.R.Civ.P. Rule 12(b)(6), to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted, on the theory that Plaintiff cannot maintain this type of "intramilitary" action. For the reasons set forth below, Defendants' motion is granted.

The gravamen of the complaint is that Plaintiff, who is a black Puerto Rican, was the victim of intentional racial discrimination by Defendants in connection with his service as a "Racial Awareness Facilitator" in the Navy. Plaintiff's specific allegations are well summarized in an earlier opinion in this case by the Honorable Prentice H. Marshall, to whom this case was originally assigned, *Alvarez v. Wilson*, 431 F.Supp. 136, 138–139 (N.D.Ill.1977), and we will not repeat that discussion here. Nor will we describe the unusual procedural history of this case, except to note that Judge Marshall denied motions to dismiss filed by Defendants on three separate occasions (on March 7, 1977, on March 31, 1980, and on September 15, 1981), in the latter two instances specifically rejecting the arguments which Defendants now press before us. Defendants attempted to appeal from Judge Marshall's September 15, 1981 order, but the Court of Appeals for the Seventh Circuit granted Plaintiff's motion to dismiss the appeal for lack of jurisdiction on February 29, 1984. *Alvarez v. Wilson*, No. 81–2696 (7th Cir. Feb. 29, 1984). The court of appeals found that Defendants' notice of appeal was not timely filed under Fed.R. App.P. Rule 4(a). On remand, the case was reassigned to us.

■ At the outset, we reject Defendants' argument that the issues decided by Judge Marshall are the "law of the case,"

and thus that we cannot reconsider Judge Marshall's rulings in this case. The Court of Appeals for the Seventh Circuit has held that a federal district judge may correct an earlier interlocutory ruling by another district judge which he or she finds to be erroneous. *Diaz v. Indian Head, Inc.*, 686 F.2d 558, 562–563 (7th Cir.1982). Indeed, in dismissing Defendants' appeal in the present case, the court of appeals specifically stated that its decision "does not mean, as ... [Plaintiff] suggests, that the district court's ruling on immunity is the 'law of the case.'" Moreover, we are not inclined to find that Defendants have waived the arguments for dismissal on which they now rely, despite the fact that they arguably did not raise those arguments until several years after Plaintiff filed his complaint. *See* Fed.R.Civ.P. Rule 12(h)(2).

■ Nevertheless, we would not disturb Judge Marshall's earlier rulings in this case absent very good reason for doing so. *See* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.404 [4.–2], at 127–129 (2d ed. 1984). Such reason, however, is provided by the Supreme Court's decision, on June 13, 1983 (while the present case was before the Seventh Circuit and long after it was last before Judge Marshall), in *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). In *Chappell*, in reversing a decision of the Court of Appeals for the Ninth Circuit, a unanimous Court held that members of the armed services "may not maintain a suit to recover damages from a superior officer for alleged constitutional violations" in the course of military service.[2] 103 S.Ct. at 2368 (footnote omitted).

The plaintiffs in *Chappell* were enlisted men in the Navy who claimed that the defendants, eight of their superior officers, had discriminated against the plaintiffs in various ways because of their race. Like

---

**2.** Although the Supreme Court's opinion in *Chappell* refers to suits by "enlisted military personnel," 103 S.Ct. at 2368, while in the present case Plaintiff was an officer rather than an enlisted man, Plaintiff does not suggest any

reason, and we cannot find any, to distinguish the present case from *Chappell* on that basis. *See Benvenuti v. Department of Defense*, 587 F.Supp. 348, 353 (D.D.C.1984).

Plaintiff, the plaintiffs in *Chappell* attempted to bring a *"Bivens* action,"[3] grounded on the Due Process Clause of the Fifth Amendment, against the defendants. In finding that the plaintiffs could not maintain a *Bivens* action in *Chappell,* the Court primarily relied on the reasoning of its landmark decision in *Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950).

In *Feres,* the Court held "that the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service," 340 U.S. at 146, 71 S.Ct. at 159, and the *"Feres* doctrine" has been held to bar tort actions by members of the armed services against other members of the armed services for injuries occurring incident to military service. *See, e.g., Jaffee v. United States,* 663 F.2d 1226, 1234 (3d Cir.1981) (en banc), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Although several of the arguments advanced by the *Feres* Court in support of its decision do not apply to actions such as the present one seeking redress for alleged deprivations of constitutional or other federally protected civil rights, *see Wallace v. Chappell,* 661 F.2d 729, 736 n. 9 (9th Cir.1981), *rev'd,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983), in *Chappell* the Supreme Court made clear that it considers the foundation of the *Feres* decision to be " 'the "peculiar and special relationship of the soldier to his superiors, [and] the effects of the maintenance of such suits on discipline.... " ' " 103 S.Ct. at 2365 (citations omitted).

While recognizing that *Feres* involved a question of statutory interpretation rather than of whether to create a *Bivens* remedy, the Court in *Chappell* largely based its decision on what it took to be the fundamental rationale of *Feres:* the need to avoid the kind of disruption of "the unique disciplinary structure of the military establishment" which allowing intramilitary

suits over service-related matters would threaten to bring about. 103 S.Ct. at 2364–2365, 2367. *See West v. United States,* 729 F.2d 1120, 1124–1125 (7th Cir.1984), *rehearing en banc granted,* No. 83–1842 (7th Cir. June 25, 1984). In particular, the Court noted Chief Justice Warren's observation " 'that courts are ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have.' " 103 S.Ct. at 2368 (citation omitted). Also of importance to the Court's decision was the fact that the comprehensive system of military justice which Congress has created provides remedies for grievances such as those presented by the plaintiffs in *Chappell,* and by Plaintiff in the present case. 103 S.Ct. at 2366–2367.

In arguing that *Chappell* does not mandate the dismissal of Count I of his complaint, Plaintiff primarily relies on *Stanley v. United States,* 574 F.Supp. 474 (S.D.Fla. 1983), *motions for interlocutory appeal granted,* Nos. 84–2018, 84–2019 (11th Cir. Apr. 13, 1984). In *Stanley,* the plaintiff alleged that, while he was a sergeant in the United States Army, Army personnel surreptitiously administered the narcotic drug commonly known as "LSD" to him in the course of a supposedly unrelated experiment in which he had volunteered to participate. 574 F.Supp. at 476. The plaintiff's second amended complaint was in part grounded directly on the Due Process Clause of the Fifth Amendment, seeking to recover damages from various "individual agents and officers of the United States" who were involved in the experiment. 574 F.Supp. at 477. In holding that the Supreme Court's decision in *Chappell* did not require dismissal of the plaintiff's *Bivens* action, the district court in *Stanley* quoted the Court's statement that "[t]his Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service," *Chappell v. Wallace,* 103 S.Ct. at 2367 (citations omitted), concluding that

---

**3.** So called because the Supreme Court first authorized an action for damages against federal officials based directly on the Constitution in

*Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971).

"[t]he obvious import of the Court's qualified holding is to limit the *Chappell* decision to its facts." *Stanley v. United States*, 574 F.Supp. at 479.

With all due respect to the *Stanley* court, we believe that that conclusion is anything but obvious. As the Court of Appeals for the Eleventh Circuit noted in granting the defendants' motions for interlocutory appeal in *Stanley*, *Stanley v. United States*, Nos. 84–2018, 84–2019, slip op. at 2–3 (11th Cir. Apr. 13, 1984), courts of appeals in two circuits have rendered decisions which are inconsistent with the district court's decision in *Stanley*. *Gaspard v. United States*, 713 F.2d 1097 (5th Cir.1983), *cert. denied*, — U.S. —, 104 S.Ct. 2354, 80 L.Ed.2d 826 (1984); *Jaffee v. United States*, 663 F.2d 1226 (3d Cir.1981) (en banc), *cert. denied*, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). *See Stanley v. United States*, 574 F.Supp. at 480 n. 8. The language of the Supreme Court in *Chappell* is quite clear: members of the armed services "may not maintain a suit to recover damages from a superior officer for alleged constitutional violations" in the course of military service. 103 S.Ct. at 2368 (footnote omitted). We cannot help but agree with the court in *Mollnow v. Carlton*, 716 F.2d 627, 628–630 (9th Cir. 1983), *cert. denied*, — U.S. —, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984), that the Court in *Chappell* "imposed a *per se* prohibition on the filing of *Bivens*-type actions by servicemen against their superiors." 716 F.2d at 630. *See also Benvenuti v. Department of Defense*, 587 F.Supp. 348, 353 (D.D.C.1984). As the *Mollnow* court explained, the Supreme Court's statement in *Chappell* that its holding did not bar all constitutional actions by military personnel was not intended to apply to damages actions such as that involved in the present case, as is made clear by the fact that none of the three cases which the Court cited as examples of cognizable constitutional actions, 103 S.Ct. at 2367, involved an action for damages by a member of the armed services against a superior officer. *Mollnow v. Carlton*, 716 F.2d at 629–630 & n. 4. *See Gaspard v. United States*, 713 F.2d at

1103 & n. 12. Contrary to Plaintiff's suggestion, nothing in *Gonzalez v. Department of Army*, 718 F.2d 926, 929 (9th Cir.1983), indicates that that court saw anything more in the Supreme Court's qualification of its holding in *Chappell* than we do.

Even were we to agree with the district court in *Stanley* that *Chappell* should be limited to its facts, however, we would find *Chappell* to be controlling in the present case, since the similarities between the facts of *Chappell* and the facts of this case deprive us of a valid basis on which to distinguish the two. Nor can Plaintiff any longer find support for his position in the Supreme Court's venerable decisions in *Wilkes v. Dinsman*, 48 U.S. (7 How.) 89, 12 L.Ed. 618 (1849), and *Dinsman v. Wilkes*, 53 U.S. (12 How.), 390, 13 L.Ed. 1036 (1851). *Chappell v. Wallace*, 103 S.Ct. at 2368 n. 2. Accordingly, Count I of Plaintiff's complaint must be dismissed.

Having reached that conclusion, we might simply dismiss Counts II, III, and IV of the complaint without further discussion, since Plaintiff does not contend that he can maintain his statutory civil rights claims if his *Bivens* claim is dismissed. However, since neither *Chappell* nor *Feres* on its face mandates the dismissal of the statutory claims, we believe that those claims merit some consideration. Because Plaintiff's § 1986 claim is derivative of his § 1985 claims, *see, e.g., Mollnow v. Carlton*, 716 F.2d at 632; *Williams v. St. Joseph Hospital*, 629 F.2d 448, 452 (7th Cir. 1980), we first address the § 1985 claims.

At the outset, we reject Defendants' argument that they cannot be liable under § 1985 because that statute only applies to those whose conduct constitutes "state action," and thus does not apply to federal officials. Although Judge Marshall thoroughly and thoughtfully considered that issue, *Alvarez v. Wilson*, 431 F.Supp. at 140–142, Defendants contend that the Supreme Court's subsequent decision in *United Brotherhood of Carpenters and Joiners of America, Local 610, AFL–CIO v. Scott*, 463 U.S. 825, 103 S.Ct. 3352, 77

L.Ed.2d 1049 (1983), establishes that Judge Marshall was incorrect in finding that § 1985 applies to "federal action," at least with respect to Plaintiff's claim under § 1985(3). We disagree. In *Scott*, the Court specifically noted that state action is not a necessary element of a § 1985(3) claim where, for example, as here, the § 1985(3) claim is based on the Thirteenth Amendment. 103 S.Ct. at 3357–3358.

Defendants' primary argument with respect to Plaintiff's § 1985 claims, that the rationales of *Feres* and *Chappell* (though not the actual holdings) require that we dismiss those claims, is, however, far more substantial. Interestingly, the plaintiffs' complaint in *Chappell* included claims under § 1985(3), and the Court of Appeals for the Ninth Circuit reversed the district court's decision dismissing those claims. In so doing, the court of appeals stated, without elaboration, that it saw no distinction, for its purposes, between the plaintiffs' *Bivens* claims and their § 1985(3) claims, 661 F.2d at 733 n. 5, and the court did not separately discuss the § 1985(3) claims. Finding that the "issue was not adequately addressed either by the Court of Appeals or in the briefs and oral argument before this Court," the Supreme Court in *Chappell* refused to consider whether the plaintiffs could maintain their § 1985(3) claims, leaving that question for the court of appeals to decide on remand. 103 S.Ct. at 2368 n. 3. *See Gonzalez v. Department of Army*, 718 F.2d at 929 & n. 2. However, because, on remand, the appeal was dismissed by agreement of the parties, *Wallace v. Chappell*, No. 79–3172 (9th Cir. Oct. 3, 1983), the court of appeals never reconsidered its ruling with respect to the plaintiffs' § 1985(3) claims. Moreover, no other court of which we are aware has discussed the impact of the *"Feres* doctrine" (in its broader sense) on intramilitary damages actions under § 1985(3), although the court in *Lombard v. United States*, 690 F.2d 215, 227 (D.C.Cir.1982), *cert. denied,* — U.S. —, 103 S.Ct. 3086, 77 L.Ed.2d 1347 (1983), seems to have assumed that § 1985(3) actions and *Bivens* actions are indistinguishable for these purposes.

One court has, however, discussed the question of whether a member of the armed services can maintain an action under § 1985 against a superior officer, in light of the Supreme Court's decision in *Chappell*. *Mollnow v. Carlton*, 716 F.2d at 630–632. As the court in *Mollnow* pointed out, although the question of whether an intramilitary action can be brought under § 1985 is a question of congressional intent rather than one involving the judicial creation of a remedy, making the problem analytically similar to that in *Feres* rather than to that in *Chappell*, the Supreme Court's analysis of the *Feres* decision in *Chappell* should guide the resolution of the statutory issues before us. 716 F.2d at 631.

As discussed above, the *Chappell* Court's discussion of *Feres* focused on " 'the "peculiar and special relationship of the soldier to his superiors, [and] the effects of the maintenance of such suits on discipline...," ' " 103 S.Ct. at 2365 (citations omitted), and the Court admonished that "[c]ivilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between ... military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment." *Id.* As the court in *Mollnow* stated:

A § 1985(1) action would strike directly at that special military relationship, perhaps even more so than an action for negligence. In a negligence action, a spontaneous event has occurred; someone has suffered an accident and another is at fault. Under § 1985(1), however, an action would lie even for calculated decisions made in the judgment and discretion of a superior military officer, so long as the subordinate alleged the superior had interfered with his military "duties."
...

The *Chappell* case discussed at lenth Congress' plenary authority over the mil-

itary.... In the exercise of that authority, Congress has enacted "a comprehensive internal system of justice to regulate military life, taking into account the special patterns that define the military structure." ... Section 1985(1) is completely foreign to that system.... [W]e know of no civilian law that would prevent superior officers, in the exercise of their wide discretion, from ordering a subordinate to refrain from performing a specific duty.... If the subordinate felt the order was unjust, he would have his opportunity to attack the decision before military tribunals. Congress established that procedure to address internal military matters. It obviously did not intend to supplement those internal military procedures through the enactment of § 1985(1).

716 F.2d at 631–632 (citations omitted). We find this reasoning to be persuasive, and we agree with the court in *Mollnow* that § 1985(1) does not authorize intramilitary actions of the type which Plaintiff seeks to bring in the present case.

For similar reasons, we find that Plaintiff cannot maintain an action against Defendants under § 1985(3). We believe that the potential for disruption of "the unique disciplinary structure of the military establishment," *Chappell v. Wallace,* 103 S.Ct. at 2367, presented by suits under § 1985(3) is as great as in the case of suits under § 1985(1), and perhaps even greater than that perceived in *Feres* with respect to suits under the Federal Tort Claims Act. *See Hillier v. Southern Towing Co.,* 714 F.2d 714, 723 (7th Cir.1983). Thus, we cannot conclude that Congress intended to allow such intramilitary actions under § 1985(3), and Plaintiff's § 1985(3) claim must be dismissed. *See Mollnow v. Carlton,* 716 F.2d at 631–632. Since neither Plaintiff's § 1985(3) claim nor his § 1985(1) claim can stand, Plaintiff's § 1986 claim must also be dismissed. *See, e.g., Mollnow v. Carlton,* 716 F.2d at 632; *Williams v. St. Joseph Hospital,* 629 F.2d at 452.

For the reasons stated above, Defendants' motion to dismiss Plaintiff's complaint is granted.