966 F.2d 307
 Randy DUFFY, Plaintiff-Appellant,
v.
UNITED STATES of America; United States Air Force Reserve;
Secretary of the Air Force; Wallace W. Whaley, individually
and in his official capacity as a Lieutenant Colonel in the
Air Force Reserves; Rieno C. Lanto, individually and in his
official capacity as a Major in the Air Force Reserves; and
Grant R. Mulder, individually and in his official capacity
as Lieutenant Colonel in the Air Force Reserves, Defendants-Appellees.
 No. 91-2790.
 United States Court of Appeals,
Seventh Circuit.
 Argued April 16, 1992.
Decided July 6, 1992.
Rehearing Denied Aug. 10, 1992.
 
 Robert J. Trizna, argued, Trizna & Lepri, Daniel J. Fumagalli, Fumagalli & Tecson, Chicago, Ill., for plaintiff-appellant.
 Gail C. Ginsberg, Asst. U.S. Atty., Fred Foreman, U.S. Atty., Charles E. Ex, Asst. U.S. Atty., argued, Criminal Div., Chicago, Ill., for defendants-appellees.
 Eugene N. Traunfeld, Vanduzer, Gershon, Jordan, Peterson & Loeffler, Chicago, Ill., for Grant R. Mulder.
 Before BAUER, Chief Judge, FLAUM, Circuit Judge, and WOOD, Jr., Senior Judge.
 BAUER, Chief Judge.
 
 
 1
 Between 1970 and 1986, plaintiff Randy Duffy was a member of the United States Air Force Reserves ("AFRES"). He served as a Technical Sergeant assigned to the 64th Tactical Airlift Squadron ("TAS"), a unit of the 928th Tactical Airlift Group ("TAG"), based at O'Hare Air Reserve Force Field ("ARFF"). In March 1985, Duffy's immediate commander, Lieutenant Colonel Grant R. Mulder, Commander of the 64th TAS, initiated administrative discharge proceedings against him pursuant to Air Force regulations. The papers Mulder filed cited multiple occurrences of unsatisfactory performance or misconduct on Duffy's part between 1983 and 1985. No embusque, Duffy attempted to block this action by filing a petition with the AFRES Directorate of Personnel Programs to terminate the administrative discharge proceedings. The petition, however, was denied.
 
 
 2
 Because of Duffy's unsatisfactory performance and the detrimental affect he was having on his unit, the Commander of the 928th TAG, defendant AFRES Lieutenant Colonel Wallace Whaley, reassigned Duffy pending resolution of the discharge proceedings, from the 64th TAG to the 928th Combat Support Squadron. When Duffy protested the reassignment, Whaley rescinded his transfer, but refused to reinstate him to his original unit because of his belief that Duffy's presence would affect the 64th TAS's morale, welfare, and mission readiness. Duffy thus was a reservist without a unit.
 
 
 3
 In November 1985, Whaley ordered defendant AFRES Major Reino C. Lanto, Staff Judge Advocate assigned to the 928th TAG, to advise him of the procedural and legal requirements to obtain a psychiatric evaluation of Duffy in connection with the pending discharge action. Lanto took the matter to a psychiatrist at Chanute Air Force Base, Major Dwight Bearden, and provided him with the file in support of the administrative discharge. Dr. Bearden's preliminary recommendation was that Duffy be referred to the mental health clinic at Chanute Air Force Base for a mental health evaluation.
 
 
 4
 On April 1, Whaley ordered Duffy to report to O'Hare ARFF on June 9, 1986, for his annual fifteen-day tour. When he arrived on the 9th, Duffy received two further orders issued by Whaley. The first required him to report to the Commander of the United States Air Force Hospital Squadron at Chanute Air Force Base on June 11. The second ordered him to report to the base mental health clinic on June 11, and the hospital for a physical examination on June 12. On the 10th, Duffy hand-delivered a letter to Whaley in which he refused to comply with these orders on the grounds they violated Air Force regulations.
 
 
 5
 Two days later, Whaley preferred court-martial charges against Duffy for willfully disobeying the commands of a superior officer and for failure to report to his appointed place of duty. Duffy was taken into pretrial confinement at Chanute. At a hearing the following day, a military magistrate found there was probable cause to believe that Duffy committed the offenses with which he was charged, but released him from pretrial confinement. On the 19th, Duffy was notified that his travel orders were amended and, effective immediately, he was reassigned to the 3345th Air Base Group ("ABG") at Chanute while awaiting court-martial. On June 26, Whaley preferred superseding court-martial charges alleging three specifications of willful disobedience of his superior officer's orders.
 
 
 6
 On the same day, Duffy filed a complaint under Article 138 of the Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 938, with the Commander and Chief of the AFRES, contesting the legality of the actions taken against him. This complaint was denied. Duffy also filed petition for a writ of habeas corpus with the United States Air Force Court of Military Review, seeking release from active duty. This petition also was denied. Duffy then sent a letter to the Commander of the 3345th ABG at Chanute requesting a discharge in lieu of trial by court-martial. This request was approved. Duffy was discharged immediately with a general discharge under honorable conditions.
 
 
 7
 Duffy then filed a ten-count complaint against the defendants in the district court on December 24, 1987. Count one, directed against the United States, the AFRES, and the Secretary of the Air Force, is a claim for declaratory and equitable relief seeking a declaration that Duffy was unlawfully called into active duty, arrested, transferred to Chanute, incarcerated, and detained there by the AFRES. Count one also alleges that Duffy's general discharge pursuant to a request for discharge was improperly procured and, as a remedy, he seeks an injunction requiring reinstatement with backpay and benefits, and correction of his military records to expunge evidence of the proceedings that preceded his request for discharge.
 
 
 8
 Count two is a Bivens[1] claim for money damages against Whaley, Lanto, and Mulder (Duffy's superior officers, collectively "the officers"), for alleged violations of his constitutional rights. Count three seeks money damages against the officers for alleged violations of Duffy's civil rights under 42 U.S.C. § 1985(1), based on their actions as AFRES officers. Count four makes the same claim against the officers, alternatively based on their actions as civilians.
 
 
 9
 Counts five, six, and seven are common law state tort claims against the officers for false imprisonment, intentional infliction of emotional distress, and interference with contract. Count eight is a common law tort claim against the United States for negligent training and supervision of the officers. Counts nine and ten seek money damages from the AFRES and the officers for violations of the Freedom of Information Act and the Privacy Act.
 
 
 10
 Defendants filed a motion to dismiss, or in the alternative for summary judgment, on April 11, 1988. While that motion was pending, Congress amended the Federal Tort Claims Act ("FTCA") to provide that a suit against the United States is the exclusive remedy for persons with common law tort claims resulting from the actions of federal employees taken within the scope of their employment. See 28 U.S.C. § 2679(b)(1). The revision requires the substitution of the United States as the sole defendant in such tort claims upon certification by the Attorney General ("scope certification") that a federal employee was acting within the scope of his employment at the time of the incident out of which the claim arose. Defendants then filed a scope certification from the Attorney General, and a motion to substitute the United States as the sole defendant on the tort claims in counts five, six, and seven.
 
 
 11
 The district court granted the motion to substitute. The United States, as the sole defendant on counts five, six, and seven, then filed a motion to dismiss, or in the alternative for summary judgment, as to those counts. On May 31, 1991, the district court granted the defendants' pending motions to dismiss. As a preliminary matter, it dismissed defendant Whaley for insufficient service of process.[2] It then dismissed: count one for Duffy's failure to exhaust intramilitary remedies; counts two, three, and four as barred under the Feres and Chappell doctrines; counts five, six, seven, and eight for failure to exhaust FTCA administrative remedies; counts nine and ten against the officers because they were improper parties, and against the AFRES for failure to state a claim upon which relief could be granted.
 
 
 12
 Duffy filed a timely notice of appeal, challenging the district court's dismissal of counts one through eight. He does not challenge the court's dismissal of Whaley for insufficient service, nor its dismissal of counts nine and ten. For the reasons that follow, we affirm.
 
 
 13
 Succinctly put, the district court dismissed counts one through eight for lack of subject matter jurisdiction. That is a question of law, which we review de novo. Houck ex rel. United States v. Folding Carton Admin., 881 F.2d 494, 504 (7th Cir.1989), cert. denied, 494 U.S. 1026, 110 S.Ct. 1471, 108 L.Ed.2d 609 (1990). The district court's findings of fact we review for clear error. Bowyer v. U.S. Dept. of Air Force, 875 F.2d 632, 635 (7th Cir.1989), cert. denied, 493 U.S. 1046, 110 S.Ct. 846, 107 L.Ed.2d 840 (1990).
 
 
 14
 We turn first to count one, in which Duffy charges that his call to active duty violated 10 U.S.C. § 672(b).[3] He further claims his arrest and confinement were unlawful, and his discharge was improperly procured, all in violation of a multiplicity of Air Force regulations, the Articles of the UCMJ, and the Rules of the Manual for Courts-Martial. The district court found that Duffy's failure to file a claim with the Air Force Board for Correction of Military Records ("BCMR") constituted a failure to exhaust intramilitary administrative remedies and precluded the relief Duffy seeks in count one. It reasoned that because the BCMR has special competence and expertise in military law and regulations, it is in a better position than a civil court to adjudicate these claims. Further, the BCMR is authorized to grant most of the relief Duffy seeks in this count, and a favorable BCMR decision would moot Duffy's claims.
 
 
 15
 Duffy argues, most emphatically, that because he was not lawfully called to active duty, he was not subject to AFRES authority and control. For that reason, he continues, whether the defendants' actions conformed to Air Force regulations governing the conduct of officers toward servicemen do not apply. The initial problem with this argument is that its major premise, that he was not lawfully called to active duty, has not been established. The second problem is that Duffy's allegations in count one belie his claim that Air Force regulations are inapplicable. In paragraphs 32 and 33 of the complaint, Duffy alleges that the order requiring him to report for active duty violated not only section 672(b), but Air Force Regulations 35-42, Vol. II: para. 5-7; para. 6-3; Table 1-1, Rule 1; and Table 5-1, Rule 7. Complaint, Record Document 1. Those regulations, and the ones Duffy claims were violated when he was arrested, confined, and improperly discharged, must be interpreted to adjudicate fairly Duffy's claims.
 
 
 16
 As the Supreme Court noted, "The basic purpose of the exhaustion doctrine is to allow an administrative agency to perform functions within its special competence--to make a factual record, to apply its expertise, and to correct its own errors so as to moot judicial controversies." Parisi v. Davidson, 405 U.S. 34, 37, 92 S.Ct. 815, 817, 818, 31 L.Ed.2d 17 (1972). The expertise the BCMR has is military. The regulations Duffy claims were violated are military. But Duffy also alleges constitutional violations in count one. The mere presence of constitutional claims, however, does not obviate the need to pursue administrative remedies. See Champagne v. Schlesinger, 506 F.2d 979 (7th Cir.1974) (constitutional challenge to Naval regulation requiring discharge for homosexuality). See also Williams v. Secretary of the Navy, 787 F.2d 552 (Fed.Cir.1986) (constitutional challenge to Naval regulation requiring discharge for drug use). As defendants point out, Duffy can obtain all the relief he seeks through the BCMR.
 
 
 17
 Based on our plenary review of the dismissal of count one, we reach the same conclusion as the district court. Duffy "will find the doors of the federal courthouse closed pending exhaustion of available administrative remedies." Champagne, 506 F.2d at 983 (quoting Hodges v. Callaway, 499 F.2d 417 (5th Cir.1974)).
 
 
 18
 The district court dismissed counts two through four, Duffy's Bivens and § 1985(1) damages claims, invoking the Feres/ Chappell doctrine. In Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), the Supreme Court held that military personnel cannot collect damages under the FTCA for injuries that arise out of or occur in the course of activity incident to military service. Id. 340 U.S. at 145-46, 71 S.Ct. at 159. Later, the Court extended this holding to include Bivens claims by military personnel that arise from injuries as a result of military service. Chappell v. Wallace, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). Duffy argues that because the Court has repudiated the rationale behind the Feres/ Chappell doctrine, it is now defunct.
 
 
 19
 The Court's rationale in Feres was threefold. First, the Court noted there is no private analogue to the relationship between the government and a member of the armed forces: the government simply cannot be held liable to members of the armed services in the same way as a private individual under like circumstances, as stated in the FTCA. Id. 340 U.S. at 141, 71 S.Ct. at 157. Second, the Court observed that the FTCA requires the law of the place where the act or omission occurred to govern liability. It reasoned that because the relationship between the government and members of its military is "distinctively federal in character," it would be irrational to allow geographic considerations to control an action brought by one injured in service against another in service. Id. at 143, 71 S.Ct. at 157-58. The Court's third rationale was that other congressionally created systems of compensation for injured service members make FTCA liability redundant. Id. at 144, 71 S.Ct. at 158.
 
 
 20
 Later, the Court articulated a fourth rationale. In a line of cases culminating in United States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Court disallowed claims it characterized as a challenge to a "decision of command," id. at 59, 105 S.Ct. at 3043-44, because they "were the type of claims that, if generally permitted, would involve the judiciary in sensitive military affairs at the expense of military discipline and effectiveness." Id. (emphasis original). See also Stencel Aero Eng. Corp. v. United States, 431 U.S. 666, 673, 97 S.Ct. 2054, 2058-59, 52 L.Ed.2d 665 (1977) (proceeding in federal court would "involve second-guessing military orders, and would often require members of the Armed Services to testify in court as to each other's decisions and actions"); United States v. Brown, 348 U.S. 110, 112, 75 S.Ct. 141, 143, 99 L.Ed. 139 (1954) (claims disallowed because of the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of such suits on discipline, and the extreme results that might obtain if suits under the [FTCA] were allowed for negligent orders given or negligent acts committed in the course of military duty").
 
 
 21
 Duffy is mistaken in his assertion that the Court has repudiated the reasoning behind the Feres doctrine. In its most recent analysis of the doctrine, the Court reaffirmed three of the four rationales supporting it: (1) the distinctively federal character of the relationship between the government and members of its armed forces; (2) the existence of other compensation systems for injured service women and men; and (3) the impermissible affect of a suit in federal court on military discipline and the risk of undermining military duty and loyalty. United States v. Johnson, 481 U.S. 681, 688-91, 107 S.Ct. 2063, 2067-69, 95 L.Ed.2d 648 (1987). See also Rogers v. United States, 902 F.2d 1268, 1270-71 (7th Cir.1990).
 
 
 22
 So Feres is alive and well. And so is its offspring, which extends the doctrine to Bivens-type damage actions. Chappell, 462 U.S. 296, 103 S.Ct. 2362. Anticipating this conclusion, Duffy argues that Feres and Chappell nonetheless are inapplicable to reservists not lawfully on active duty. The dispositive inquiry, however, is not whether Duffy was lawfully on active duty at the time his claims arose, but whether he "stood in the sort of relationship to the [Air Force] at the time of his arrest and pretrial confinement that those incidents arose out of activity incident to service." Rogers, 902 F.2d at 1272. See also Norris v. Lehman, 845 F.2d 283 (11th Cir.1988) (Feres applicable even though plaintiff no longer on active duty at time of challenged incidents). Duffy's status as a reservist, which unquestionably is a military status, was the sine qua non for his call to active duty, even if that call were illegal. Chappell therefore bars his Bivens claim alleged in count two.
 
 
 23
 The district court dismissed Duffy's 42 U.S.C. § 1985(1) damage claims in counts three and four as barred by Chappell as well. First, Duffy argues to us, as he did regarding his Bivens claim, that as a reservist his section 1985(1) action is not Chappell-barred. We resolved that issue above. He next mounts a weak attack on the cases the district court cited in support of its conclusion. The leading case barring section 1985(1) actions under Chappell is Mollnow v. Carlton, 716 F.2d 627 (9th Cir.1983), cert. denied, 465 U.S. 1100, 104 S.Ct. 1595, 80 L.Ed.2d 126 (1984). Mollnow was an Air Force reservist who challenged the actions of his commanding officers and military medical personnel in their efforts to have him removed from flight duty and, ultimately, discharged from the service, facts strikingly similar to ours. The court looked to the reasoning behind Chappell and Feres, and concluded that reasoning applies to section 1985(1) claims as well. It found particularly persuasive the significance to the Feres Court of the relationship between officers and subordinates, and the affect maintenance of such suits would have on discipline. Id. at 631. It reasoned that a section 1985(1) action would be particularly disruptive to that relationship. Any time a subordinate felt his superior officer had interfered with his military duties, he could walk right into a civil courthouse and ask a civil jury to award damages, notwithstanding the uniquely military nature of the officer's decisions and orders. Id.
 
 
 24
 We cannot accept that section 1985(1)'s drafters would have intended such a result had it occurred to them. Moreover, recognizing the viability of suits against officers under section 1985(1) would permit members of the armed forces to make an end run around Feres and Chappell, sapping the vitality and practical effect of those two decisions. As Mollnow points out, " 'Civilian courts must, at the very least, hesitate long before entertaining a suit which asks the court to tamper with the established relationship between enlisted military personnel and their superior officers; that relationship is at the heart of the necessarily unique structure of the military establishment.' " Id. (citing Chappell, 462 U.S. at 300, 103 S.Ct. at 2366). Not only do we find Mollnow 's logic persuasive, we find it dispositive. Chappell operates to bar section 1985(1) actions brought by members of the armed forces. See also Miller v. Newbauer, 862 F.2d 771, 774-75 (9th Cir.1988); Alvarez v. Wilson, 600 F.Supp. 706, 711-12 (N.D.Ill.1985). Accord Bois v. Marsh, 801 F.2d 462, 469-70 (D.C.Cir.1986) (claim brought under § 1985(3) barred by Chappell ).
 
 
 25
 That leaves Duffy's pendent state common law tort claims in counts five through eight. Recall that before the district court allowed the United States to substitute as the sole defendant on counts five through seven, only count eight made out a claim against the United States. After substitution, all four counts were subject to the FTCA. The district court dismissed those counts because Duffy failed to exhaust the remedies the FTCA provides. He argues to us that dismissal was improper because the district court erroneously allowed substitution.
 
 
 26
 Duffy's argument here has three prongs. First, he asserts substitution was improper because his claims are intentional torts, which are not covered by the FTCA. This argument is meritless. The act expressly provides that it is the sole remedy for actions against the United States for "the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment...." 28 U.S.C. § 2679(b)(1). We are unwilling to accept that intentional torts do not fall under the rubric of wrongful acts.[4] See also Hatcher-Capers v. Haley, 762 F.Supp. 393 (D.D.C.1991) (FTCA covers intentional infliction of emotional distress); Nadler v. Mann, 731 F.Supp. 493, 495 n. 6 (S.D.Fla.1990) (intentional acts are wrongful acts within the meaning of the statute).
 
 
 27
 Duffy's second argument is that at the time of the events giving rise to his claims, the officers were not federal employees within the meaning of the FTCA because they were not on active duty. This argument also is meritless. The act defines federal employees as "officers or employees of any federal agency, members of the military or naval forces of the United States, ... and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation." 28 U.S.C. § 2671. As did the district court, we do not read this to mean that a person must possess formal employee status. Like the Second Circuit in Witt v. United States, 462 F.2d 1261, 1263-64 (2d Cir.1972), we believe section 2671 was drafted to have an expansive reach and should be applied with an eye to general agency law rather than to the formalities of employment contracts. See also Guccione v. United States, 847 F.2d 1031 (2d Cir.1988), cert. denied, 493 U.S. 1020, 110 S.Ct. 719, 107 L.Ed.2d 739 (1990) (FBI informant was federal employee for the purposes of the FTCA at the time of his tortious conduct even though he was not an official government employee).
 
 
 28
 So we arrive at Duffy's third, and final argument. Section 2671 states: " 'Acting within the scope of his office or employment,' in the case of a member of the military or naval forces of the United States ... means acting in the line of duty." 28 U.S.C. § 2671. Duffy challenges the employment scope certification the Attorney General filed with the motion to substitute, and argues that unless the officers can prove they were on active duty at the time of their alleged tortious conduct, their actions cannot have been "in the line of duty." The question of what it means to be "in the line of duty" has been long resolved, and contrary to Duffy's position. In Williams v. United States, 215 F.2d 800 (9th Cir.1954), the court held that the phrase meant acting in the line of military duty. Id. at 808. In a per curiam opinion, the Supreme Court reversed and remanded, instructing that the California doctrine of respondeat superior controlled the case. 350 U.S. 857, 76 S.Ct. 100, 100 L.Ed. 761 (1955). Ever since Guthrie v. United States, 392 F.2d 858 (7th Cir.1968), we have followed the Court's ruling in Williams and looked to state law of respondeat superior to determine whether a person was acting "in the line of duty." Illinois law thus guides our analysis, as it did the district court's.
 
 
 29
 Under Illinois law, the conduct of a servant is within the scope of employment if, but only if: (1) it is of the kind he is employed to perform; (2) it occurs substantially within the authorized time and space limits; and (3) it is actuated, at least in part, by a purpose to serve the master. Conversely, it is not within the scope of employment if it is different in kind from that authorized, far beyond the authorized time or space limits, or too little actuated by a purpose to serve the master. Pyne v. Witmer, 129 Ill.2d 351, 135 Ill.Dec. 557, 561, 543 N.E.2d 1304, 1308 (1989). United States Air Force Brigadier General John J. Closner filed an affidavit in support of the government's motion to substitute, accompanied by the scope certification. In the affidavit, Closner stated that: (1) reservists perform military missions although they are not on active duty; (2) reservists who otherwise have full-time civilian careers must have the flexibility to make decisions and take actions pursuant to their reserve duties without the necessity of being placed on active duty status each time; (3) commanders and others in reserve units are expected to continue to support and serve their units regardless of their duty status; (4) actions taken by, advice given by, management of, and personnel assigned to reserve units are totally within the scope of a reservist's employment. The district court found these facts established that the officers were acting in the line of duty, as defined by Illinois law. We see nothing clearly erroneous in that finding.
 
 
 30
 Consequently, the United States established that the officers were acting in the line of duty at the time of their alleged tortious conduct. Having done so brings counts five through eight squarely into FTCA territory. The district court dismissed those counts for failure to exhaust FTCA remedies. We need not consider whether Duffy has exhausted FTCA remedies because, as we noted above, FTCA claims of military personnel are barred under the Feres doctrine. Although we arrive at the same conclusion as the district court, we get there by a slightly different route. We have no subject matter jurisdiction over Duffy's claims.
 
 The judgment of the district court is
 
 31
 AFFIRMED.
 
 
 
 [1]
 Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)
 
 
 [2]
 Hereafter, use of "the officers" to identify the individual defendants refers to Lanto and Mulder only
 
 
 [3]
 In pertinent part, the statute reads:
 At any time, an authority designated by the Secretary concerned may, without the consent of the persons affected, order any unit, and any member not assigned to a unit organized to serve as a unit, in an active status in a reserve component under the jurisdiction of that Secretary to active duty for not more than 15 days a year.
 10 U.S.C. § 672(b). The gravamen of Duffy's claim is that he was part of a unit at the time he was called to active duty, and because the section provides no authority to activate him apart from his unit without his consent, his activation was unlawful.
 
 
 [4]
 The amendment's legislative history also is instructive:
 The "exclusive remedy" provision of [the FTCA] is intended to substitute the United States as the solely permissible defendant in all common law tort actions against Federal employees who acted in the scope of employment. Therefore, suits against Federal employees are precluded even where the United States has a defense which prevents an actual recovery. Thus, any claim against the government that is precluded by the exceptions set forth in Section 2680 of Title 28, U.S.C. also is precluded against an employee....
 H.R.Rep. No. 700, 100th Cong., 2d Sess. 6 (1988), reprinted in 1988 U.S.C.C.A.N. 5945, 5950.