991 F.2d 148
 1994 A.M.C. 293
 Walter Gene BLAKEY, Personal Representative of the Estate of
Walter Scot Blakey, Deceased; Walter Gene Blakey;
Mary Lou Blakey, individually,
Plaintiffs-Appellants,
v.
U.S.S. IOWA; United States Navy; United States of America,
Defendants-Appellees.
 No. 92-1156.
 United States Court of Appeals,
Fourth Circuit.
 Argued Nov. 30, 1992.
Decided April 21, 1993.
 
 Lawrence Patrick Nolan, Nolan, Reincke, Thomsen & Villas, P.C., Eaton Rapids, MI, argued (Edward D. Barnes, Englisby, Barnes, Hennessy & Englisby, Chesterfield, VA, on brief), for plaintiffs-appellants.
 Marie Louise Hagen, Civil Div., U.S. Dept. of Justice, Washington, DC, argued, (Stuart M. Gerson, Asst. Atty. Gen., Jeffrey Axelrad, Director, Torts Branch, Civil Div., U.S. Dept. of Justice, Richard Cullen, U.S. Atty., Norfolk, VA, on brief), for defendants-appellees.
 Before ERVIN, Chief Judge, WILLIAMS, Circuit Judge, and SPROUSE, Senior Circuit Judge.
 OPINION
 ERVIN, Chief Judge:
 
 
 1
 Walter Gene and Mary Lou Blakey appeal the district court's order dismissing their negligence action against the U.S.S. Iowa, the United States Navy, and the United States of America ("Government"), arising out of an explosion aboard the U.S.S. Iowa which killed their son Walter Scot Blakey. Walter Gene Blakey brought suit for his son's wrongful death in his capacity as personal representative for the estate of his son. In addition, Walter Gene and Mary Lou Blakey sued in their individual capacities for negligent infliction of emotional distress based on the Navy's post-explosion handling of its investigation of their son's death. The Government filed a motion to dismiss for lack of subject matter jurisdiction, and the district court granted the motion as to both claims. 780 F.Supp. 350. We affirm.I
 
 
 2
 The decedent was a Petty Officer in the United States Navy assigned to active duty on the U.S.S. Iowa. On April 19, 1989, the Iowa was sailing in navigable waters off the coast of Puerto Rico. The Iowa's crew was engaged in firing exercises from its sixteen-inch gun turrets. The decedent was participating in an exercise in gun turret II when a series of explosions occurred, causing the death of decedent and forty-six other sailors. The Blakeys assert that the exercises were unauthorized because the tests included mixtures of 1,900- and 2,700-pound projectiles with five bags of D846 powder rather than the required six bags, in direct violation of the Navy's standard firing-configuration regulations.
 
 
 3
 Pursuant to the Manual of the Judge Advocate General ("JAG Manual"), the Navy convened a one-officer fact-finding investigation of the explosion.[1] The Navy initially decided to put off any criminal investigations. On May 8, 1989, however, the Navy received information that suggested foul play,[2] so it requested that the Naval Investigative Service commence a separate criminal investigation. As a result of these investigations, the Navy concluded that the intentional, wrongful act of an individual had caused the explosion.
 
 
 4
 A subcommittee of the Committee on Armed Services of the House of Representatives studied the Navy's investigation and issued a report criticizing its findings. Staff of the Investigations Subcomm. and Defense Policy Panel of the House of Representatives Comm. on Armed Services, 101st Cong., 2d Sess., "Report on the USS Iowa Tragedy: An Investigative Failure" 25-26 (Comm. Print 1990). The General Accounting Office subsequently requested an independent investigation, which found that an inexperienced rammer-man who may have over-rammed the propellant in the sixteen-inch gun fired in turret II could have caused the explosion. Ultimately, on October 17, 1991, the Navy issued a statement that "the opinion that the explosion resulted from a wrongful intentional act is disapproved. The exact cause of the explosion is unknown." Comnavseasys Com letter 8030 00/MRN SER 00/0101091.
 
 II
 
 5
 The Blakeys assert subject matter jurisdiction for their representative claim under various admiralty statutes, including the Jones Act, 46 U.S.C.App. § 688; the Suits in Admiralty Act, 46 U.S.C.App. §§ 741-752; the Death on the High Seas Act, 46 U.S.C.App. §§ 761-768; and the Public Vessels Act, 46 U.S.C.App. §§ 781-790. The Blakeys seek to invoke jurisdiction under the Federal Tort Claims Act, 28 U.S.C. §§ 2671-2680, for their individual negligence claim. Addressing each claim in turn, we find that subject matter jurisdiction is lacking for both claims.
 
 
 6
 * With the promulgation of the Federal Tort Claims Act ("FTCA"), Congress abrogated the United States' sovereign immunity against actions for its tortious conduct. In Feres v. United States, however, the Supreme Court excepted from permissible tort claims against the United States those actions based on injuries to service members that occur incident to military activity. 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). The Court has continued to support immunity in such military matters. See, e.g., United States v. Johnson, 481 U.S. 681, 692, 107 S.Ct. 2063, 2069-70, 95 L.Ed.2d 648 (1987).
 
 
 7
 The Supreme Court has offered three justifications for immunity to actions involving tortious injuries to military personnel. First, the nature of the relationship between the Government and members of the armed services requires a uniform federal remedy that does not vary upon the situs of the incident. Id. at 689, 107 S.Ct. at 2068. Second, litigants may not use the FTCA for remedial recovery when Congress already has provided an adequate, simple, certain, and uniform compensation system for injuries or death of those in the armed services.[3] Id. at 689, 107 S.Ct. at 2068. Third, the federal courts should avoid involvement in the military or unnecessary infringement in the military's relationship with its members. This relationship is grounded upon the need for discipline and compliance with orders, and should not be second-guessed. Id. at 690-91, 107 S.Ct. at 2068-69.
 
 
 8
 Although these three factors apply to the Blakeys' case, their case differs from Feres and its progeny in one respect. While the Feres doctrine addresses directly the United States' immunity from suit under the FTCA, the Blakeys attempted to proceed with their wrongful death claims under various admiralty statutes. The Blakeys do not contest that the decedent was stationed on the U.S.S. Iowa on active duty and therefore that the decedent was engaged in the firing exercises incident to military activities. Instead, the Blakeys assert that the Feres doctrine should not apply when the military activities that proximately caused the injury are unauthorized or when the claim sounds in products liability. In addition, the Blakeys assert that the Feres doctrine does not apply to actions brought pursuant to the Jones Act,[4] the Suits in Admiralty Act,[5] the Public Vessels Act,[6] or the Death on the High Seas Act.[7]
 
 
 9
 The three factors highlighted by the Supreme Court as justifications for barring recovery against the military under the FTCA apply equally to actions under the various admiralty provisions relied upon by the Blakeys. All of the circuits that have addressed this issue agree: Feres blocks actions by service members or their survivors based on admiralty jurisdiction. See, e.g., Potts v. United States, 723 F.2d 20, 21-22 (6th Cir.1983) (denying jurisdiction under Suits in Admiralty Act and Public Vessels Act), cert. denied, 466 U.S. 959, 104 S.Ct. 2172, 80 L.Ed.2d 555 (1984); Hillier v. Southern Towing Co., 714 F.2d 714, 721 (7th Cir.1983) (denying jurisdiction under Suits in Admiralty Act); Cusanelli v. Klaver, 698 F.2d 82, 85 (2d Cir.1983) (denying jurisdiction under Public Vessels Act); Charland v. United States, 615 F.2d 508, 509 (9th Cir.1980) (denying jurisdiction under Public Vessels Act); Beaucoudray v. United States, 490 F.2d 86, 86 (5th Cir.1974) (denying jurisdiction under Suits in Admiralty Act and Public Vessels Act); United States v. The SS Washington, 172 F.Supp. 905, 907 (E.D.Va.) (denying jurisdiction under Death on the High Seas Act), aff'd sub nom. United States v. Texas Co., 272 F.2d 711 (4th Cir.1959).
 
 
 10
 The Blakeys' legal theories for recovery are plainly barred by Feres and its progeny as well. See, e.g., Stencel Aero Eng'g Corp. v. United States, 431 U.S. 666, 673-74, 97 S.Ct. 2054, 2058-59, 52 L.Ed.2d 665 (1977) (holding that Feres doctrine applies in action against United States raising products liability claims); Jaffee v. United States, 663 F.2d 1226, 1235 (3d Cir.1981) (en banc) (holding that Feres serves to block actions based on unauthorized activities or intentional torts), cert. denied, 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). Following the prudent and well-reasoned decisions of these courts, we decline to recognize exceptions to the Feres doctrine for claims based on unauthorized military activity or products liability.
 
 B
 
 11
 The Feres doctrine does not preclude recovery for independent acts of negligence by the military, if the acts occur post-service and are not incident to military activities. United States v. Brown, 348 U.S. 110, 112-13, 75 S.Ct. 141, 143-44, 99 L.Ed. 139 (1954). Therefore, the Blakeys seek damages in their individual status for emotional distress which they contend the Navy caused by its negligence during its internal investigation of the U.S.S. Iowa explosion. The district court rejected this claim, concluding that the investigation was within the discretionary function exception to the FTCA and therefore that the negligent infliction of emotional distress action was barred for lack of subject matter jurisdiction.
 
 The FTCA provides that
 
 12
 [t]he provisions of this chapter and section 1346(b) of this title shall not apply to--
 
 
 13
 (a) Any claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of a federal agency or an employee of the Government, whether or not the discretion involved be abused.
 
 
 14
 28 U.S.C. § 2680(a). The discretionary function exception bars all claims based on discretionary acts regardless of whether the acts were performed negligently or represented an abuse of discretion. Dalehite v. United States, 346 U.S. 15, 32-34, 73 S.Ct. 956, 966-67, 97 L.Ed. 1427 (1953).
 
 
 15
 We have adopted a two-part test to determine whether actions involve a discretionary function: (1) does the conduct involve judgment or choice, and (2) does the conduct depend on public policy considerations? Piechowicz v. United States, 885 F.2d 1207, 1211-13 (4th Cir.1989) (interpreting Berkovitz v. United States, 486 U.S. 531, 545-48, 108 S.Ct. 1954, 1963-64, 100 L.Ed.2d 531 (1988)). The Blakeys assert that the Navy's conduct was not discretionary because the Navy was not acting in compliance with both the Manual of the Judge Advocate General and a Secretary of the Navy Instruction. Specifically, the Blakeys claim that the Navy acted negligently in convening a one-person investigatory unit rather than a more experienced panel of investigators, and in delaying its request for a formal criminal investigation of the explosion.
 
 
 16
 The JAG Manual guidelines for investigations state:
 
 
 17
 The several types of fact-finding bodies as described in the preceding section are prescribed to accommodate the variety of situations which require investigation in the naval service. Thus, selection of the type of fact-finding body in a specific instance should be largely determined by such factors as the powers which the fact-finding body will require, the paramount purpose of the inquiry, the relative seriousness of the subject of the inquiry, the probable complexity of the factual issues involved, the time allocated for completion of the inquiry, and other such matters. Much must be left to the judgment and discretion of officers in command. In general, however, the following guidelines should be considered in selecting the type of fact-finding body. When the incident under investigation involves substantial loss of life or when significant international or legal consequences may be involved, either a court of inquiry or a board of investigation required to conduct a hearing, depending generally upon whether the power to subpoena civilian witnesses is involved, should be considered.
 
 
 18
 Manual of the Judge Advocate General, "Administrative Fact-Finding Bodies--Generally," Chapter II, 0205(a). These guidelines detail choices that are available to officers organizing an investigation and stress the importance of judgment and discretion in the decisions. The guidelines offer suggestions that officers may consider, but the JAG Manual does not mandate any given procedure for investigations. Investigations generally require questioning military officials about their conduct and orders given and could involve classified information. The course that a military investigation takes remains a choice of the officials in charge and implicates policy considerations, making it subject to the discretionary function exception. The Blakeys offer no testimony to refute the discretionary nature of the investigation at issue here other than the suggestion that the Navy exercised an incorrect choice when opting for a one-person fact-finding body. The prudence of a choice may not be second-guessed through the bringing of FTCA actions if the choice was in fact discretionary. Therefore, the Blakeys' allegations regarding the one-person fact-finding body cannot form the basis of an FTCA cause of action.
 
 
 19
 The Blakeys further allege that the Navy negligently disregarded a Secretary of the Navy Instruction to instigate a criminal investigation promptly after the explosion. The Secretary's Instruction states:
 
 
 20
 (3) In addition to referral of major criminal offenses, when any of the following circumstances occur, command shall promptly provide available information to the NIS for preliminary inquiry to determine if a request for a full investigation is warranted:
 
 
 21
 (a) Unattended death of military personnel ... occurring on a Navy ... installation ... when criminal activity cannot be firmly excluded.
 
 
 22
 (b) Any fire or explosion of questionable origin affecting the Department of the Navy ... property or property under Navy ... control.
 
 
 23
 Secretary of the Navy Instruction (SECNAVINST) 5520.3. The Instruction requires a criminal investigation only when the characterization of the accident is decidedly criminal or at least questionable. Navy officials have discretion to make these determinations; therefore, the decision to request a criminal investigation falls within the ambit of the discretionary function exception to the FTCA.
 
 
 24
 The Blakeys disagree with this characterization of their claim. They point to the Report of the Investigations Subcommittee and Defense Policy Panel of the Committee on Armed Services in the House of Representatives and its findings that the Navy's delay in calling for a criminal investigation was wrong. Staff of the Investigations Subcomm. and Defense Policy Panel of the House of Representatives Comm. on Armed Services, 101st Cong., 2d Sess., "Report on the USS Iowa Tragedy: An Investigative Failure" 25-26 (Comm.Print 1990). Although the Subcommittee's assessment may be accurate, it is not relevant to the discretionary function exception's application.
 
 
 25
 The exception covers all discretionary acts, whether shown to be abusive or not. The Blakeys' only means for surviving a motion to dismiss are to "allege facts which would support a finding that the challenged actions are not the kind of conduct that can be said to be grounded in the policy of the regulatory regime." United States v. Gaubert, --- U.S. ----, ---- - ----, 111 S.Ct. 1267, 1274-75, 113 L.Ed.2d 335 (1991). The Blakeys have not submitted evidence to support such a finding.
 
 III
 
 26
 Having failed to establish subject matter jurisdiction either under admiralty law or under the Federal Tort Claims Act, the Blakeys cannot maintain their action in federal court. Therefore, we affirm the district court's order granting the Government's motion to dismiss all of the Blakeys' claims due to lack of subject matter jurisdiction.
 
 
 27
 AFFIRMED.
 
 
 
 [1]
 The Navy elected the one-officer investigation over its other options of convening a board of investigation or holding formal hearings. Manual of the Judge Advocate General, "Administrative Fact-Finding Bodies--Generally," Chapter II, 0204-0205
 
 
 [2]
 The investigating officer learned that a survivor of the explosion had been listed as the beneficiary of an accidental death insurance policy secured by one of the sailors who was killed in the explosion
 
 
 [3]
 The armed forces are governed by extensive provisions for retirement or separation for physical disability. See 10 U.S.C. §§ 1201-1221. When a member of the armed forces dies while on active duty, his or her survivors are entitled to death benefits as prescribed by Chapter 75 of Title 10, Armed Forces. See 10 U.S.C. §§ 1475-1490. In addition, the Veterans' Benefits Act outlines detailed benefit schemes for both the veteran and his or her dependants and survivors. See 38 U.S.C. §§ 1101-2410
 
 
 [4]
 The relevant provisions of the Jones Act provide:
 Any seaman who shall suffer personal injury in the course of his employment may ... maintain an action for damages at law ...; and in case of the death of any seaman as a result of any such personal injury the personal representative of such seaman may maintain an action for damages at law....
 46 U.S.C.App. § 688. The relief afforded by the Jones Act is made available to them through the Suits in Admiralty Act where the United States, as owner or operator of the vessel, is the employer. Forgione v. United States, 202 F.2d 249, 252 (3d Cir.), cert. denied, 345 U.S. 966, 73 S.Ct. 950, 97 L.Ed. 1384 (1953). Therefore, the Blakeys cannot assert a representative action directly under the Jones Act, but must rely on the Suits in Admiralty Act to the extent that actions under that act are not barred by Feres.
 
 
 [5]
 The Suits in Admiralty Act authorizes actions against the United States pursuant to the following provision:
 In cases where if such vessel were privately owned or operated, or if such cargo were privately owned or possessed, or if a private person or property were involved, a proceeding in admiralty could be maintained, any appropriate nonjury proceeding in personam may be brought against the United States....
 46 U.S.C.App. § 742.
 
 
 [6]
 The Public Vessels Act provides that "[a] libel in personam in admiralty may be brought against the United States, ... for damages caused by a public vessel of the United States...." 46 U.S.C.App. § 781. The Public Vessels Act goes on to incorporate by reference all provisions of the Suits in Admiralty Act. Id. § 782. Public Vessels Act actions may be sustained notwithstanding Feres prohibitions only when Suits in Admiralty Act actions are possible
 
 
 [7]
 The Death on the High Seas Act provides, in relevant part:
 Whenever the death of a person shall be caused by wrongful act, neglect, or default occurring on the high seas ..., the personal representative of the decedent may maintain a suit for damages ... against the vessel, person, or corporation which would have been liable if death had not ensued.
 46 U.S.C.App. § 761.