**James DORSEY, Appellant,**

v.

**UNITED STATES DEPARTMENT OF LABOR, et al., Appellees.**

**No. 93–5080.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 12, 1994.

Decided Dec. 16, 1994.

---

Ross Lipman, New York City, argued the cause for appellant. With him on the briefs were Mark H. Duesenberg, Washington, DC, and Ella L. Roberts, Washington, DC.

Deborah Ruth Kant, Atty., Dept. of Justice, Washington, DC, argued the cause for appellees. With her on the brief were Frank W. Hunger, Asst. Atty. Gen., Eric H. Holder, Jr., U.S. Atty., and Barbara C. Biddle, Atty., Dept. of Justice, Washington, DC.

Before: EDWARDS, Chief Judge, SILBERMAN and RANDOLPH, Circuit Judges.

Opinion for the court filed by Circuit Judge RANDOLPH.

RANDOLPH, Circuit Judge:

The issue in this appeal from the judgment of the district court, dismissing James Dorsey's suit against the Department of Labor, its Secretary, the Office of Job Corps, and its Director, is whether there is a private right of action for monetary damages against the federal government for violating § 504 of the Rehabilitation Act of 1973, as amended in 1978, 29 U.S.C. § 794. The Ninth Circuit, in *Doe v. Attorney General,* 941 F.2d 780 (9th Cir.1990), decided this issue against the government. We reach the opposite conclusion on the ground that the government has not

waived its sovereign immunity from such suits.

Dorsey alleged that he was handicapped and that, in violation of § 504, the defendants had unlawfully discriminated against him on the basis of his handicap during his participation in the Job Corps. Administered by the Department of Labor, the Job Corps provides training and education for individuals between the ages of 14 and 22 who are "economically disadvantaged" and who were living in "an environment so characterized by cultural deprivation, a disruptive homelife, or other disorienting conditions as to substantially impair prospects for successful participation in other programs providing needed training, education or assistance." 29 U.S.C. § 1693(2) & (3). According to Dorsey, the "vast majority of the Job Corps facilities around the country are residential. In these facilities, Job Corps participants live in a dormitory environment and are under the 24–hour supervision of Job Corps personnel."

Dorsey joined the Job Corps at the residential center in Dayton, Ohio, in August 1987. After enrolling, he submitted to a mandatory medical examination in which he tested positive for HIV antibodies. For this reason and pursuant to its policy at the time, the Job Corps expelled Dorsey from the program in September 1987 and a year later Dorsey brought this suit challenging the Job Corps' action.

In January 1989, while the suit was pending, the Job Corps notified Dorsey that it had revised its policy by making the exclusion of HIV-positive applicants discretionary rather than mandatory and that Dorsey could re-apply to one of its residential centers. On the recommendation of a Job Corps representative, Dorsey applied to the residential facility in Morganfield, Kentucky, and travelled there in May 1989. Once again Dorsey tested HIV-positive. The Job Corps nevertheless permitted him to join the Kentucky facility, where he enrolled in culinary arts courses. In his amended complaint, Dorsey alleges that after his HIV test results became widely known at the facility, Job Corps staff members and enrollees ridiculed and harassed him. Dorsey requested and received a transfer to the Dayton, Ohio, facility where he had first enrolled. According to Dorsey, a teacher at the Dayton facility disclosed his HIV-positive status and fellow students thereafter harassed him.

In a ruling Dorsey does not contest, the district court dismissed his complaint as moot insofar as it sought declaratory and injunctive relief. As to Dorsey's claim for damages for emotional distress, the district court, relying partly on *Doe v. District of Columbia,* 796 F.Supp. 559 (D.D.C.1992), ruled that the Rehabilitation Act permitted recovery from the federal government. On the federal defendants' motion, the court reconsidered its ruling and held that § 504 of the Act had not waived the government's immunity from damages. Dorsey appeals from the court's judgment dismissing the compensatory damages portion of his complaint.

■ The Rehabilitation Act of 1973 deals with discrimination against individuals on the basis of their "handicaps," as the original version of the Act put it, or their "disabilities," as a 1992 amendment to the Act rephrased it. Rehabilitation Act of 1973, Pub.L. No. 93–112, 87 Stat. 394, *amended by* the Rehabilitation Act Amendments of 1992, Pub.L. No. 102–569, § 102(p)(32), 106 Stat. 4360 (codified at 29 U.S.C. § 794(a) (Supp. IV 1992)). Section 504, as amended in 1978, bars private federal aid recipients and "Executive agenc[ies]" from discriminating on the basis of a person's handicap and requires the agencies to promulgate regulations needed to carry out the provision. Rehabilitation, Comprehensive Services, and Developmental Disabilities Amendments of 1978, Pub.L. No. 95–602, § 119, 92 Stat. 2982. When this action commenced in July 1988, § 504 read in relevant part:

> No otherwise qualified individual with handicaps ... shall, solely by reason of his handicap, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance *or under any program or activity conducted by any Executive agency....*

29 U.S.C. § 794(a) (1988). (The italicized words were added in a 1978 amendment to the Act.)

The district court ruled that Dorsey's HIV-positive status rendered him handicapped within the Act's meaning and we shall

assume, *arguendo,* this to be so. *See Harris v. Thigpen,* 941 F.2d 1495, 1524 (11th Cir. 1991); *Severino v. North Fort Myers Fire Control Dist.,* 935 F.2d 1179, 1182–83 n. 4 (11th Cir.1991); *Leckelt v. Board of Comm'rs of Hosp. Dist. No. 1,* 909 F.2d 820, 825 (5th Cir.1990). We shall also assume that Dorsey is "an otherwise qualified individual" under § 504 and that the actions he complains about constitute forbidden "discrimination" for which the Job Corps is responsible.

Whether Dorsey may recover damages from the federal government for the discrimination is another matter. The pertinent remedy provision of the Act, § 505(a)(2), states:

> The remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 ... shall be available to any person aggrieved by any act or failure to act by any recipient of Federal assistance or Federal provider of such assistance under section 794 of this title.

29 U.S.C. § 794a(a)(2). Title VI of the Civil Rights Act prohibits federal grantees or aid recipients from discriminating on the basis of race. 42 U.S.C. § 2000d. Given § 505(a)(2), Dorsey must establish not only the general proposition that claimants may recover monetary relief in private Title VI actions, but also the more specific point that they may do so against Executive agencies despite sovereign immunity.

■ Dorsey's difficulties begin with the fact that Title VI does not explicitly provide a private right of action for compensatory damages. It preserves whatever general right to judicial review other laws provide or, if none is provided, it allows persons aggrieved to seek judicial review of government funding and grant decisions pursuant to the Administrative Procedure Act. 42 U.S.C. § 2000d–2. If a private right of action for damages under Title VI is to exist, therefore, it must be judicially inferred, or as is commonly stated, implied. On that score the decisional law is not entirely settled. The Supreme Court, in *Consolidated Railroad Corp. v. Darrone,* 465 U.S. 624, 104 S.Ct. 1248, 79 L.Ed.2d 568 (1984), suggested that the issue was open: "[w]ithout determining the extent to which money damages are available under § 504, we think it clear that § 504 authorizes a plaintiff who alleges intentional discrimination to bring an equitable action for backpay." 465 U.S. at 630, 104 S.Ct. at 1252. *See also* the separate opinions in *Guardians Ass'n v. Civil Service Commission,* 463 U.S. 582, 103 S.Ct. 3221, 77 L.Ed.2d 866 (1983). Since then the Court has treated the question whether a private cause of action should be inferred as an issue of statutory construction and has cautioned that, if a statute provides one sort of remedy, "courts must be especially reluctant to provide additional remedies." *Karahalios v. National Fed'n of Fed. Employees, Local 1263,* 489 U.S. 527, 533, 109 S.Ct. 1282, 1286, 103 L.Ed.2d 539 (1989). On the other side of the scale is not only the Ninth Circuit opinion already mentioned, sustaining such an implied right of action (*Doe v. Attorney General,* 941 F.2d at 787), but also the earlier Supreme Court decision in *Cannon v. University of Chicago,* 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), which held that Title IX of the Education Amendments of 1972, 20 U.S.C. §§ 1681–1688, is enforceable through an implied right of action because Title IX was derived from Title VI, Congress understood private remedies to be available under Title VI, and Congress therefore intended similar remedies to be available under Title IX. *Cannon,* 441 U.S. at 694–703, 99 S.Ct. at 1956–60. Citing *Cannon,* we stated that "private suits provide an appropriate and effective mechanism for judicial consideration of compliance with Title VI." *Adams v. Bell,* 711 F.2d 161, 168 n. 35 (D.C.Cir.1983) (in banc), *cert. denied,* 465 U.S. 1021, 104 S.Ct. 1272, 79 L.Ed.2d 678 (1984). While our discussion in *Adams,* like the Supreme Court's decision in *Consolidated Railroad Corp. v. Darrone,* concerned only equitable relief, this may not be determinative in view of *Franklin v. Gwinnett County Public Schools,* 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). *Franklin* held that once the federal courts have inferred a private cause of action from a statute that did not expressly provide one, the "courts have the power to award any appropriate relief," including not only equitable relief but also monetary damages, unless it appears the Congress intended otherwise. 503 U.S. at ——, 112 S.Ct. at 1035.

■ We see no need, however, to resolve the issue. Even if there is an implied

right of action for damages under Title VI, and thus under § 504, it cannot exist as against the federal government. The federal government's waiver of sovereign immunity must be "unequivocally expressed" and the statutory provision containing the expression must "establish unambiguously that the waiver extends to monetary claims." *United States v. Nordic Village, Inc.*, 503 U.S. 30, ——, ——, 112 S.Ct. 1011, 1014, 1015, 117 L.Ed.2d 181 (1992). Because a § 504 private right of action for damages—against anyone—must be judicially implied from a statute silent on the subject, Dorsey is unable to point to any explicit language in the Rehabilitation Act (or in Title VI) waiving the government's sovereign immunity. He therefore cannot prevail. While private rights of action may be implied, waivers of sovereign immunity may not. The Supreme Court has said exactly that, and on more than one occasion: "A waiver of sovereign immunity 'cannot be implied....' " *Irwin v. Department of Veterans Affairs*, 498 U.S. 89, 95, 111 S.Ct. 453, 457, 112 L.Ed.2d 435 (1990), quoting *United States v. Mitchell*, 445 U.S. 535, 538, 100 S.Ct. 1349, 1351, 63 L.Ed.2d 607 (1980), which quoted *United States v. King*, 395 U.S. 1, 4, 89 S.Ct. 1501, 1502, 23 L.Ed.2d 52 (1969).

█ Dorsey argues that "[b]ecause monetary damages are available against private parties under title VI and section 505(a)(2), ... they are equally available against the federal government.... Congress intended that *all* remedies available under title VI also be available to aggrieved persons seeking redress under section 505(a)(2)." Brief of Appellant at 11–12. The Ninth Circuit in *Doe v. Attorney General*, 941 F.2d at 790, 792, took much the same position. That damages may be recovered against private parties does not, however, lead to the conclusion that damages may also be recovered against the government. When it comes to monetary relief, sovereign immunity puts the federal government on a different footing than private parties. To contend, as Dorsey does, that Congress "intended" to make all remedies available for § 504 violations is simply another way of arguing, quite incorrectly, that a court may find a waiver of the government's sovereign immunity despite the absence of any unequivocal statutory expression to that effect. The Ninth Circuit recognized the statutory void and tried to fill it with some legislative history from the 1978

amendment to § 504 bringing Executive agencies within its coverage. But the court found nothing in the committee reports and the five statements it quoted from the floor debates are—at the very best—ambiguous. 941 F.2d at 791–92. The three representatives and two senators, rather than expressing themselves clearly on the subject, uttered not a word about relinquishing the government's immunity from damages. In any event, we believe the Ninth Circuit would have decided the case differently if it had had the benefit of the Supreme Court's later decision in *Nordic Village*. The Court there held "the 'unequivocal expression' of elimination of sovereign immunity that we insist upon is an expression in statutory text. If clarity does not exist there"—and it does not in Dorsey's case—"it cannot be supplied" by legislative history. 503 U.S. at ——, 112 S.Ct. at 1016.

*Affirmed.*