Mary Louise CUMMINGS, Appellant,

v.

**DEPARTMENT OF THE NAVY, Appellee.**

No. 00–5348.

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 16, 2001.

Decided Feb. 15, 2002.

David P. Sheldon argued the cause for the appellant. Eugene R. Fidell and Steven H. Wishod were on brief.

Eric L. Hirschhorn, Anne W. Stukes, Philip B. Onderdonk Jr., Ronald S. Flagg, Joseph R. Guerra and Arthur B. Spitzer were on brief for amici curiae The American Legion, et al., in support of the appellant.

Meredith Manning, Assistant United States Attorney, argued the cause for the appellee. Kenneth L. Wainstein, Acting United States Attorney at the time the brief was filed, and R. Craig Lawrence, Assistant United States Attorney, were on brief.

Before: GINSBURG, Chief Judge, HENDERSON, Circuit Judge, and WILLIAMS, Senior Circuit Judge.

Opinion for the court filed by Circuit Judge HENDERSON.

Dissenting opinion filed by Senior Circuit Judge WILLIAMS.

KAREN LeCRAFT HENDERSON, Circuit Judge:

The appellant, Mary Louise Cummings, seeks reversal of the district court's September 6, 2000 dismissal of her Privacy Act lawsuit against the Department of the Navy (Navy). The district court held that the doctrine of *Feres v. United States*, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), bars a servicewoman's Privacy Act lawsuit if her injury arose out of or occurred in the course of activity "incident to service." *Cummings v. Dep't of the Navy*, 116 F.Supp.2d 76, 78–82 (D.D.C.2000). The court further determined on the facts that Cummings's injury did, indeed, arise in the course of activity incident to her service. *See id.* at 82–84. On appeal, Cummings challenges the district court's decision on two grounds. First, she argues that the *Feres* doctrine does not apply to service personnel's Privacy Act claims against the military. Second, she contends that even if the doctrine does attach to such suits generally, the unauthorized release of her training record to a civilian author was not incident to service under *Feres*'s case-specific inquiry and that her suit against the Navy, therefore, is not barred.

Whether members of the armed forces may sue the military for damages under the Privacy Act is a question of first impression. We answer in the affirmative and hold that the *Feres* doctrine does not extend to suits under the Privacy Act. Accordingly, we reverse the district court's dismissal of Cummings's action and remand for further proceedings addressing her specific Privacy Act allegations.

I.

Cummings attended the United States Naval Academy, completed flight training and became a Naval aviator.[1] She was assigned to a flight squadron at the Naval Air Station, Cecil Field, in Jacksonville, Florida and began training on the Strike Fighter Attack 18—a.k.a. "Hornet"—aircraft in November 1994. Approximately seven months after Cummings's Hornet training began, the Navy convened a Field Naval Aviator Evaluation Board (Evalua-

---

1. The following factual account is drawn largely from the "Factual Background" portion of the district court order, *Cummings*, 116 F.Supp.2d at 77–78, which in turn is "drawn from the allegations in the [c]omplaint." *Id.* at 77 n. 2.

tion Board) to assess her flying skills and potential. After hearing testimony and reviewing the records of Cummings's four training flights, the Evaluation Board recommended that the Navy terminate her flying status. Notwithstanding the Evaluation Board's conclusion, Vice Admiral Richard Allen—Commander of the Navy's Atlantic Fleet—directed Cummings to retain her flight status and resume Hornet training under the same administrative command.

During Cummings's time at Cecil Field, the Navy permitted an author, Robert Gandt, to observe Hornet training so that he could research a book he was writing about the training of fighter pilots. Cummings alleges in her complaint that Vice Admiral Allen "allowed Gandt to follow specific squadron personnel without their knowledge as they proceeded throughout the [Hornet] training program." *Cummings*, 116 F.Supp.2d at 78 (quoting Compl. ¶ 13).

In 1997 Gandt published his book, *Bogeys and Bandits: Making of a Fighter Pilot*. The book was based primarily upon Gandt's observations of the Hornet training program and upon Navy-supplied information. Cummings asserts that a character in Gandt's book named "Sally Hopkins" portrays Cummings, that the book includes specific details and direct quotes from her negative Evaluation Board report, that as a result of the book's publication "her military and civilian career prospects have been severely damaged" and that "she has suffered severe mental distress, embarrassment, and humiliation, both personally and professionally." *Id.* (quoting Compl. ¶ 65).

Cummings sued the Navy for violating the Privacy Act of 1974. *See* 5 U.S.C. § 552a(b) ("No agency shall disclose any record which is contained in a system of records by any means of communication to any person ... except pursuant to a writ-

ten request by, or with the prior written consent of, the individual to whom the record pertains...."). The Navy moved to dismiss Cummings's claim on *Feres* grounds. The district court held that *Feres* applies to Privacy Act lawsuits and that the Navy's release of Cummings's Evaluation Board report was "incident to service"—and, therefore, not actionable—because it "was related to the policy [of openness] the Navy had ... established toward Mr. Gandt." *Cummings*, 116 F.Supp.2d at 84.

## II.

Reviewing the district court's grant of the Navy's motion to dismiss, we accept as true the facts that Cummings alleges in her complaint. *See El–Hadad v. United Arab Emirates*, 216 F.3d 29, 32 n. 5 (D.C.Cir.2000) (citing *Saudi Arabia v. Nelson*, 507 U.S. 349, 351, 113 S.Ct. 1471, 1474, 123 L.Ed.2d 47 (1993)). Our review of the issues raised by Cummings's appeal is *de novo*. *See Artis v. Greenspan*, 158 F.3d 1301, 1306 (D.C.Cir.1998) ("[W]e apply the *de novo* standard of review to the district court's application of law to undisputed fact[s].").

### A.

In *Feres*, the United States Supreme Court held that "the Government is not liable under the Federal Tort Claims Act for injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146, 71 S.Ct. at 159. Cummings argues that this doctrine should not be extended to suits against government agencies under the Privacy Act. For the reasons discussed *infra*, we agree.

■ In determining whether members of the armed forces may sue the military for damages under the Privacy Act, we start with the "cardinal" canon of statutory

construction: "[C]ourts must presume that [the Congress] says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992) (citations omitted). "When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'" *Id.* at 254, 112 S.Ct. at 1149 (quoting *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981)). With these precepts in mind, we turn to the text of the Privacy Act.

■ As the district court recognized, the Privacy Act "applies to 'agencies,' defined as 'any executive department, *military department,* Government corporation, Government controlled corporation, or other establishment in the executive branch of the government … or any independent regulatory agency.'" *Cummings,* 116 F.Supp.2d at 78 n. 5 (quoting 5 U.S.C. § 552(f)) (emphasis added). And, as the trial court further observed, certain provisions of the Act manifest congressional intent to protect uniformed personnel like Cummings. *See id.* at 78 n. 5, 81 (citing 5 U.S.C. §§ 552(f), 552a(g)(1), 552a(k)(5) and 552a(k)(7)). One provision permits agencies, in certain circumstances, to exempt from the Act's purview "investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for … military service…." 5 U.S.C. § 552a(k)(5). Another allows exemption—again, in limited circumstances—of "evaluation material used to determine potential for promotion in the

armed services…." 5 U.S.C. § 552a(k)(7). The district court rightly noted that such exemptions "would be unnecessary if military servicepersons were excluded from the Privacy Act altogether." *Cummings,* 116 F.Supp.2d at 78 n. 5.

We conclude that the aforementioned provisions, taken together, demonstrate that the Congress unambiguously intended to establish a duty that runs from a "military department" (like the Navy) to military personnel (like Cummings) not to "disclose any record which is contained in a system of records" (like Cummings's Evaluation Board report). 5 U.S.C. § 552a(b). The Navy does not contest this. Instead, it contends that "without necessarily waiving immunity with respect to money damages," the Congress "intended to apply the Act to 'military departments'" by permitting a servicemember to seek equitable remedies only. Br. of Appellee at 25. Its contention finds no support in the text of the statute; without regard to the identity of the plaintiff or the agency she is suing, the Act plainly authorizes injunctive relief, 5 U.S.C. § 552a(g)(2)(A), (3)(A), *and* monetary relief, 5 U.S.C. § 552a(g)(4),[2] and it permits a court to "assess against the United States reasonable attorney fees and other litigation costs," 5 U.S.C. § 552a(g)(2)(B), (3)(B). Moreover, that the Act (as seen *supra*) allows a military department to exempt from the Act's reach certain records based upon their content,[3] *see, e.g.,* 5 U.S.C. § 552a(k)(5), (7), demonstrates that the Congress did not intend the courts to

---

**2.** Section 552a(g)(4) provides:
In any suit brought under the provisions of … this [Act] in which the court determines that the agency acted in a manner which was intentional or willful, the United States shall be liable to the individual in an amount equal to the sum of … actual damages sustained by the individual … and … the costs of the action together with reason-

able attorney fees as determined by the court.

**3.** Whether the Navy has exempted—and whether § 552a(k) *permits* it to exempt— Cummings's report from the requirements of the Privacy Act are issues to be addressed, if at all, on remand. We express no opinion on those matters here.

craft *additional* exemptions from coverage based upon the type of relief a servicewoman requests (i.e., by limiting suits to equitable relief only). *See Fawn Mining Corp. v. Hudson,* 80 F.3d 519, 523 (D.C.Cir.1996) ("Neither lawyers nor judges serve as back-seat lawmakers who may extend statutes beyond their bounds or change the rules that Congress has set.").

▪ The district court correctly reminded us that "waivers of sovereign immunity must be unequivocally expressed and narrowly construed," *Cummings,* 116 F.Supp.2d at 81 (quoting *Dorsey v. Dep't of Labor,* 41 F.3d 1551, 1555 (D.C.Cir. 1994)). Erroneously, however, it denied effect to the unequivocally expressed waiver contained in the Privacy Act, 5 U.S.C. § 552a(g). Construing a waiver of sovereign immunity narrowly, even "strictly in favor of the sovereign," means only that a court may not "enlarge[ ] [the waiver] beyond what the language requires." *Tomasello v. Rubin,* 167 F.3d 612, 618 (D.C.Cir. 1999) (quoting *United States v. Nordic Village, Inc.,* 503 U.S. 30, 34, 112 S.Ct. 1011, 1015, 117 L.Ed.2d 181 (1992)). We need not "enlarge" by any stretch the Privacy Act's purview in order for the statute to avoid the effects of the *Feres* doctrine. As the district court acknowledged, "[o]n its face, the Privacy Act would appear to permit actions brought by military personnel...." *Cummings,* 116 F.Supp.2d at 81. And statutory text remains the best evidence of congressional intent. *See Tataranowicz v. Sullivan,* 959 F.2d 268, 276 (D.C.Cir.1992). The Act not only appears to, but does, permit actions brought by military personnel.

▪ The fact that "the Privacy Act was enacted once the *Feres* doctrine was in place, yet does not specifically [insulate] the causes of action it creates from the effects of *Feres,*" *Cummings,* 116 F.Supp.2d at 81, does not alter our conclusion. Congressional enactments are better evidence of legislative intent than is congressional silence. *See Burns v. United States,* 501 U.S. 129, 136, 111 S.Ct. 2182, 2186, 115 L.Ed.2d 123 (1991) ("[A]n inference drawn from congressional silence certainly cannot be credited when it is contrary to all other textual and contextual evidence of congressional intent."); *but cf.* ARTHUR CONAN DOYLE, *Silver Blaze, in* 1 SHERLOCK HOLMES: THE COMPLETE NOVELS AND STORIES 455, 475 (1986) ("I had grasped the significance of the silence of the dog, for one true inference invariably suggests others.... Obviously the midnight visitor was someone whom the dog knew well."). True, the Congress's familiarity with *Feres* can be presumed, *see Wash. Legal Found. v. United States Sentencing Comm'n,* 17 F.3d 1446, 1450 (D.C.Cir.1994) (citation omitted), but the *Feres* doctrine was not extended beyond the Federal Tort Claims Act (FTCA) context until 1983. *See generally Chappell v. Wallace,* 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983) (applying *Feres* to constitutional tort claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971)). When the Congress enacted the Privacy Act in 1974, therefore, it had no reason to insulate the Act from the effects of a doctrine that, at the time, applied exclusively to the FTCA.

▪ That the Congress did not bark about *Feres* in enacting the Privacy Act is especially unenlightening in view of the fact that a Privacy Act lawsuit does not implicate any of the concerns that caused the Supreme Court to enunciate the *Feres* doctrine in the first place. *Cf. Lockhart v. Fretwell,* 506 U.S. 364, 373, 113 S.Ct. 838, 844, 122 L.Ed.2d 180 (1993) (applying maxim *"[c]essante ratione legis, cessat et ipsa lex"* (when reason for law ceases, so does law itself)). In formulating the (oft-criticized) *Feres* doctrine, the Supreme Court

first observed that because the FTCA provides that "[t]he United States shall be liable ... in the same manner and to the same extent as a private individual under like circumstances," *Feres*, 340 U.S. at 141, 71 S.Ct. at 157 (quoting 28 U.S.C. § 2674), an "obvious shortcoming" in the plaintiffs' claims was that they pointed to "no liability of a 'private individual' even remotely analogous to that which they [were] asserting against the United States." *Id.* Second, the Court found that because of the "distinctively federal" relationship between the United States and its military forces, the Congress could not have intended the armed forces to be subject to local tort law pursuant to the FTCA's provisions. *Id.* at 142–44, 71 S.Ct. 153 at 157–58 (quoting *United States v. Standard Oil Co.*, 332 U.S. 301, 67 S.Ct. 1604, 91 L.Ed. 2067 (1947)). Third, the Court found that because servicemen were already entitled to veterans' benefits, the Congress could not have meant for them to recover double compensation for their injuries by allowing them to sue under the FTCA as well. *Id.* at 144, 71 S.Ct. at 158. Four years after *Feres*, in *United States v. Brown*, 348 U.S. 110, 75 S.Ct. 141, 99 L.Ed. 139 (1954), the Court offered a fourth justification for military immunity from the FTCA—the "peculiar and special relationship of the soldier to his superiors, the effects of the maintenance of [tort] suits on discipline, and the extreme results that might obtain if suits under the [FTCA] were allowed for negligent orders given or negligent acts committed in the course of military duty...." *Brown*, 348 U.S. at 112, 75 S.Ct. at 143.

Cummings convinces us that none of these rationales supports extension of the *Feres* doctrine to the Privacy Act. The Supreme Court's first concern is inapplicable to a Privacy Act lawsuit because the Act, unlike the FTCA, nowhere establishes the private liability parallel as a prerequisite for the "United States [to] be liable ... in the same manner and to the same extent ... under like circumstances...." *Feres*, 340 U.S. at 141, 71 S.Ct. at 157 (quoting 28 U.S.C. § 2674). *Feres*'s second and third rationales are likewise inapposite because the Privacy Act is federal (not state) law and because the Congress has provided no other compensation or benefits for those injured by a violation of the Act.

The Navy makes a superficially compelling argument that *Feres*'s fourth concern (as expounded in *Brown*) mandates the doctrine's extension to Privacy Act suits. The portion of the district court order addressing the matter strengthens the Navy's case: "The [possibility] that every time a serviceman were demoted or saddled with a less than perfect performance rating he could resort to the courthouse could be a very real one if Privacy Act suits were not subject to the *Feres* doctrine." *Cummings*, 116 F.Supp.2d at 82 (quotations omitted). Although judicial reluctance to impinge on military matters is understandable in many contexts,[4] it is

---

4. In *Bois v. Marsh*, 801 F.2d 462 (D.C.Cir. 1986), for example, we applied the *Feres* doctrine to a 42 U.S.C. § 1985(3) suit by a military officer against her superiors because the Supreme Court's "analysis in *Feres* and *Chappell* that courts should not *imply* damage remedies for service-connected injuries is fully applicable to" such suits generally. *Bois*, 801 F.2d at 469 (emphasis added). In addition, we extended *Feres* to the officer's intentional tort claims against her superiors because "subjecting military commanders to personal liability" for such claims would "pose[ ] an equal, if not greater, threat to military discipline as would permitting suits under the FTCA." *Id.* at 471.

*Bois*'s reasoning remains sound. We do not mean to imply otherwise by declining to extend it here; we simply note that neither of the concerns prompting our decision in that case exists in the Privacy Act context. Likewise, by declining to extend *Feres* to the Privacy Act, we are not—contrary to the as-

unjustified in this setting; as we have discussed, the Congress clearly *enlisted* the federal courts to inquire into potential military violations of the Privacy Act. *Cf. United States v. Johnson*, 481 U.S. 681, 699, 107 S.Ct. 2063, 2073, 95 L.Ed.2d 648 (1987) (Scalia, J., dissenting) ("I do not think the effect upon military discipline is so certain, or so certainly substantial, that we are justified in holding (if we are ever justified in holding) that Congress did not mean what it plainly said in the statute before us."). What is more, subjecting the Navy to suit under the Act does not permit a servicewoman like Cummings to "resort to the courthouse" simply because she does not agree with her performance ratings. Instead, the Act provides a remedy only if the military department has unlawfully released the performance rating and if the claimant establishes that she was injured as a result. *See* 5 U.S.C. § 552a(b) (prohibiting disclosure in certain circumstances); 5 U.S.C. § 552a(g)(1)(D) (requiring claimant to show "adverse effect" because of disclosure).

The Navy claims that because *Feres* has been extended beyond the FTCA context to suits under civil rights statutes and to common-law and constitutional tort actions, we must extend it as well to suits under the Privacy Act. *See* Br. of Appellee at 17–18 (citing, *inter alia*, *United States v. Stanley*, 483 U.S. 669, 682, 107 S.Ct. 3054, 3063, 97 L.Ed.2d 550 (1987); *Chappell*, 462 U.S. at 300, 103 S.Ct. at 2365–66). It is true that we, like other circuits, have extended *Feres* to bar claims brought "under both 42 U.S.C. § 1985(3) for deprivation of . . . civil rights and under common-law tort theories." *Bois v. Marsh*, 801 F.2d at 468; *see supra* note 4;

see also, e.g., *Mackey v. United States*, 226 F.3d 773, 776 (6th Cir.2000) (joining D.C., Second, Third, Fourth, Seventh, Eighth and Ninth Circuits in "hold[ing] that the *Feres* doctrine applies to intentional torts"); *Alvarez v. Wilson*, 600 F.Supp. 706, 712 (N.D.Ill.1985) (extending *Feres* to claims brought under § 1985(3)). But that fact in itself means nothing; we have also concluded "that the *Feres* doctrine and its rationale have no application to claims [brought by members of the armed forces] under the Swine Flu Act" because we cannot "imagine how [that] type of litigation could impinge on any legitimate interest in maintaining discipline within our fighting forces." *Hunt v. United States*, 636 F.2d 580, 599 (D.C.Cir.1980). That is, even "[d]espite the absence of a clear legislative intent" in the Swine Flu Act to insulate the legislation from the effects of *Feres*, we have nonetheless found it insulated. *Id.* at 589. Because "the duty remains ours to determine the meaning of [a particular] statute," *id.*, and to determine whether the Congress in a particular statute intended to provide service personnel with a cause of action against the military departments, the bare fact that the *Feres* doctrine has been extended beyond the FTCA to other statutory contexts is not particularly probative. The Congress may provide a cause of action in some laws and leave other statutes subject to *Feres*; it is our job to sort out which it has done here. As the district court correctly noted, "[n]o court has yet provided an analysis of whether or not *Feres* should apply to actions under the Privacy Act" specifically. *Cummings*, 116 F.Supp.2d at 79. It would appear, then, that we have a clean slate to implement the Congress's will and to per-

---

sertion of our dissenting colleague—"abandon[ing]" it because it is "under a cloud." Dissenting op. at 1061. Nor are we fashioning "a rule rather arbitrarily cutting [*Feres*] off with the exact applications already found

by the Supreme [C]ourt and no more." *Id.* Instead, we are merely holding that the Privacy Act means what it says. We would hope that *that* is not an option "available only to the Supreme Court." *Id.*

mit Cummings to seek monetary relief from the Navy for the allegedly unauthorized release of her training record to a civilian author.

**B.**

Because we conclude that the *Feres* doctrine is inapplicable to Cummings's action against the Navy, we need not address whether the release of her record was "incident to service" under *Feres*'s case-specific test. That test is irrelevant and the issue is moot.

**III.**

Given a clear congressional mandate, we hold that the doctrine of *Feres v. United States* does not extend to Privacy Act lawsuits brought by military personnel against the military departments. Accordingly, we reverse the district court's dismissal of Cummings's action against the Navy. She may proceed with her action on remand.

*So ordered.*

WILLIAMS, Senior Circuit Judge, dissenting:

*Feres v. United States,* 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152 (1950), holds that the Federal Torts Claims Act ("FTCA") waiver of sovereign immunity is inapplicable to suits by uniformed military personnel for injuries arising out of activity "incident to service." The *Feres* doctrine is under something of a cloud. See, e.g., *United States v. Johnson,* 481 U.S. 681, 700, 107 S.Ct. 2063, 2074, 95 L.Ed.2d 648 (1987) (Scalia, J., dissenting) ("*Feres* was wrongly decided and heartily deserves the 'widespread, almost universal criticism' it has received."). Nonetheless, the Supreme Court, this court and our fellow circuits have all consistently extended *Feres* beyond the FTCA. That they have done so is unsurprising for damage actions that carry a genuine risk of disrupting the hierarchical command relations among mil-

itary personnel—after all, that is the risk that ultimately underlies *Feres*. Comparing Privacy Act damage actions with other claims that the Supreme Court and this court have found barred by *Feres,* I see neither any greater hint from Congress that *Feres* should not govern, nor any indication that Privacy Act damage claims pose less risk of interference with command relations. This leads me to the conclusion that Cummings's claim is precluded.

It might seem at first blush that the Privacy Act's explicit provisions addressing the military might justify non-application of *Feres*. The Act purports to govern "any executive department, military department, Government corporation, Government controlled corporation, or other establishment in the executive branch of the government ... or any independent regulatory agency." 5 U.S.C. § 552(f) (incorporated into the Privacy Act by 5 U.S.C. § 552a(a)(1) & § 552a note (References in Text)). But Congress similarly specified the military in the FTCA. "Federal agency," the FTCA's basic unit for liability, see 28 U.S.C. § 2675, is defined to include "the military departments," *id.* § 2671.

The Privacy Act also exempts certain military documents from protection under limited circumstances. See, e.g., 5 U.S.C. § 552a(k)(5) (discussing "investigatory material compiled solely for the purpose of determining suitability, eligibility, or qualifications for ... military service"); 5 U.S.C. § 552a(k)(7) (addressing "evaluation material used to determine potential for promotion in the armed services"). But these provisions provide no basis for refusing to apply *Feres*; once again, the FTCA has similar language. It exempts claims "arising out of the combatant activities of the military or naval force, or the Coast Guard, during time of war," 28

U.S.C. § 2680; yet *Feres* applies to all claims, combat-related or not, wartime or peacetime. See, e.g., *United States v. Shearer*, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) (applying *Feres* to claim involving crime off duty and off base).

Indeed, any inferences against *Feres* drawn from a statute's explicit coverage and partial exemptions of the military are weaker for Privacy Act damage actions than for the FTCA. The Privacy Act creates a range of specific, *non-damage* remedies, see 5 U.S.C. § 552a(g)(2) & (3), which the government concedes remain fully applicable. Navy Br. at 25. Cf. *Jorden v. National Guard Bureau*, 799 F.2d 99, 110–11 (3d Cir.1986) (distinguishing between monetary and injunctive relief in applying *Feres* to § 1983). But the FTCA provides only damage actions. Thus there is a broad world to which the military-specific language of the Privacy Act can apply, while *Feres* leaves the FTCA's similar language with little or no role.

More generally, we have understood *Feres* to create the equivalent of a "clear statement" rule. In finding it applicable to claims under 42 U.S.C. § 1985(3), we said:

> ... *Feres* itself represents a refusal to read statutes with their ordinary sweep. The unique setting of the military led the *Feres* Court to resist bringing the armed services within the coverage of a remedial statute in the absence of an *express Congressional command.*

*Bois v. Marsh*, 801 F.2d 462, 469 n. 13 (D.C.Cir.1986) (emphasis added); see also *Coffman v. State of Michigan*, 120 F.3d 57, 59 (6th Cir.1997) (holding that ADA and Rehabilitation Act do not apply to the military absent a *"clear direction"* from Congress (emphasis added)); *Roper v. Department of Army*, 832 F.2d 247, 248 (2d Cir. 1987) (holding that in the "absence of some express indication" from Congress, Title VII does not apply to the military). In the Privacy Act there is no more of an "express Congressional command" than there is in the FTCA.

The Supreme Court has itself extended *Feres* to all *Bivens* actions. *United States v. Stanley*, 483 U.S. 669, 681–84, 107 S.Ct. 3054, 3062–64, 97 L.Ed.2d 550 (1987); *Chappell v. Wallace*, 462 U.S. 296, 103 S.Ct. 2362, 76 L.Ed.2d 586 (1983). *Bivens*, of course, imposes liability on *individual* officials, as indeed does the liability under 42 U.S.C. § 1985(3) that in *Bois* we found subject to *Feres*. Thus one might write off both *Stanley* and *Chappell*, and *Bois*, as extensions addressed to some special anxiety that might flow from individual exposure to liability. Compare Maj. Op. at 1056 n.4. That is, of course, conceivable. But it is a rather odd spin on *Feres* itself, which after all involved only government liability. There is no basis in the Supreme Court opinions for some idea that the discipline issues explaining *Feres* depend materially on the nominal defendant. That is not surprising, in view of the widespread government provision for reimbursement of officers found liable for acts committed in the service of government. See, e.g., *Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir.2001) (noting that the "vast majority" of § 1983 claims that the Second Circuit handles involve state indemnification of the individual defendants); see also *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 436, 117 S.Ct. 1382, 1404, 137 L.Ed.2d 626 (1997) (Breyer, J., dissenting) (listing various state statutes "authorizing indemnification of employees found liable under § 1983 for actions within the scope of their employment").

Alternatively, one might write *Stanley/Chappell* off as simply an exercise of judicial restraint when implying damage actions (such implication is, of course, the only basis for *Bivens*). See *Stanley*, 483 U.S. at 679, 107 S.Ct. at 3061. But we

have already rejected this as too narrow a view. In *Bois,* confronting exactly such an argument by the dissenting judge, we said:

> But *Chappell* will not reasonably bear such a crabbed interpretation. To the contrary, the Supreme Court expressly held in *Chappell* that the same analysis, based on concern with the disruption of military discipline, applies regardless of whether a court is asked to entertain an intramilitary suit under the Constitution or a statute.

801 F.2d at 470 n. 13 (citing explicit passages from *Chappell*).

Thus we must address the kinds of risks to military discipline that damage actions under the Privacy Act pose. For damage actions under the Act (in contrast with claims for specific relief), the plaintiff must show that the agency action was "intentional or willful." 5 U.S.C. § 552a(g)(4). Proof that such an intent underlies the alleged breach (here an impermissible release of data) is likely to take the factfinder deep into the breach's context. Indeed, the complaint here affirmatively asserts that the release arose out of sharply contested views about Cummings's performance as a trainee on "Hornet" aircraft. See Complaint ¶¶ 5–43; see generally Maj. Op. at 1052–53. How does this stack up against the plain vanilla sex discrimination claim involved in *Bois*? I cannot imagine why it would less involve "second guessing of military decisions by civilian courts," *Bois,* 801 F.2d at 470, or less "require testimony by military personnel about command decisions," *id.,* or less "tend to pit a plaintiff's superiors against one another," *id.* Indeed, damage actions under § 552a(g)(4) seem quite commonly to yield evidence of prolonged workplace donnybrooks. See, e.g., *Tomasello v. Rubin,* 167 F.3d 612, 614–17

(D.C.Cir.1999) (involving government employee's claim of various unauthorized disclosures in conjunction with an alleged pattern of ethnic and age discrimination); *Mount v. U.S. Postal Service,* 79 F.3d 531 (6th Cir.1996) (involving employee's claim that certain disclosures of medical and other records to director and union official were motivated by a desire to retaliate for complaints about work conditions); *Henson v. NASA,* 14 F.3d 1143, 1146 (6th Cir.1994) (involving employee's claim that superior released confidential medical information, "intentionally or negligently inflicted severe emotional distress ... [and] engaged in an intentional, reckless, malicious, and tortious pattern of abusive management" as part of a pattern of retaliation). So *Bois,* I believe, controls.

In sharp contrast is *Hunt v. United States,* 636 F.2d 580 (D.C.Cir.1980), where we found *Feres* inapplicable to the "substituted liability" regime established under the Swine Flu Act. *Id.* at 583 n. 3. To encourage flu vaccine production, the government had assumed responsibility for product liability suits against the manufacturers, *id.* at 591–92, though assigning the United States a possible right of later indemnification, *id.* at 595–96. Suits under the Swine Flu Act therefore involved claims of tortious conduct only by the manufacturer, conduct that seems as remote from matters of military discipline and command as one can imagine.

I dissent primarily because the court's decision seems to me inconsistent with the principles laid down by the Supreme Court in its *Feres* jurisprudence, and with our circuit's clear understanding of those principles. But it's worth noting that other circuits have carried *Feres* well beyond its FTCA origins, applying it to § 1983 claims,[1] to various antidiscrimination stat-

---

1. E.g., *Bowen v. Oistead,* 125 F.3d 800, 803 n. 2 (9th Cir.1997); *Knutson v. Wisconsin Air National Guard,* 995 F.2d 765, 769 (7th Cir.

1993); *Watson v. Arkansas National Guard,* 886 F.2d 1004 (8th Cir.1989); *Walden v. Bartlett,* 840 F.2d 771, 773 (10th Cir.1988); *Craw-*

utes such as Title VII,[2] the Americans with Disabilities Act,[3] and the Age Discrimination in Employment Act.[4] And it has been applied to various admiralty waivers of immunity, such as those in the Suits in Admiralty Act, 46 U.S.C.App. § 742 *et seq.*, and the Public Vessels Act, 46 U.S.C.App. § 781 *et seq.*[5] As the Ninth Circuit has observed, holding that *Feres* barred a slew of common law, constitutional and even RICO complaints, the *Feres* "bar has been interpreted broadly," so that "practically any suit that 'implicates ... military judgments and decisions' runs the risk of colliding with *Feres.*" *Bowen,* 125 F.3d at 803 (case citations omitted).

*Feres* is, as I observed earlier, under a cloud. The most plausible solutions seem to be (1) consistent application of its principle; (2) a rule rather arbitrarily cutting it off with the exact applications already found by the Supreme court and no more; and (3) complete abandonment. As the second and third options are available only to the Supreme Court, *Rodriguez de Quijas v. Shearson/American Express, Inc.,* 490 U.S. 477, 484, 109 S.Ct. 1917, 1922–23, 104 L.Ed.2d 526 (1989); *Khan v. State Oil Co.,* 93 F.3d 1358, 1364 (7th Cir.1996) (Posner, C.J.) ("We have been told by our judicial superiors not to read the sibylline leaves of the U.S. Reports for prophetic clues to overruling."), I would proceed with the first.

I respectfully dissent.

ford v. Texas Army National Guard, 794 F.2d 1034 (5th Cir.1986); *Penagaricano v. Llenza,* 747 F.2d 55 (1st Cir.1984).

2. E.g., *Roper,* 832 F.2d at 247–48; *Gonzalez v. Department of the Army,* 718 F.2d 926, 927–28 (9th Cir.1983); *Mackey v. United States,* 226 F.3d 773, 776 (6th Cir.2000).

3. *Baldwin v. United States Army,* 223 F.3d 100 (2d Cir.2000); *Coffman,* 120 F.3d at 57–59.

4. *Spain v. Ball,* 928 F.2d 61 (2d Cir.1991) (dictum).

5. See, e.g., *Blakey v. U.S.S. Iowa,* 991 F.2d 148 (4th Cir.1993); *Potts v. United States,* 723 F.2d 20 (6th Cir.1983); *Charland v. United States,* 615 F.2d 508 (9th Cir.1980); *Beaucoudray v. United States,* 490 F.2d 86 (5th Cir.1974).